J-S52033-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| BRYAN M. HILL | |
| Appellant | No. 671 EDA 2014 |

Appeal from the Judgment of Sentence March 4, 2014
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0006321-2013

BEFORE: GANTMAN, P.J., ALLEN, J., and FITZGERALD, J.*

MEMORANDUM BY GANTMAN, P.J.:                    **FILED OCTOBER 31, 2014**

Appellant, Bryan M. Hill, appeals from the judgment of sentence entered in the Delaware County Court of Common Pleas, following his bench trial conviction for driving under the influence of alcohol ("DUI")—highest rate of alcohol.[1]  We affirm.

The relevant facts and procedural history of this appeal are as follows:

> [O]n June 1, 2013, at approximately 12:05 a.m. [Officer Alonso] heard a police dispatch call about a hit-and-run accident in the vicinity of S. Newtown Street Rd. (Rt 252) and Media Line Road in Newtown Township, Delaware County, Pennsylvania.  The hit-and-run accident allegedly involved a motor vehicle that struck a utility pole.  There was no description of the vehicle broadcast over the police

_____

[1] 75 Pa.C.S.A. § 3802(c).

_____

*Former Justice specially assigned to the Superior Court.

radio only that it was last seen heading north on S. Newtown Street Road towards Newtown Township.

Just after hearing the radio call, Officer [Alonso] was on West Chester Pike near the intersection with S. Newtown Street Rd. (Rt 252) when he observed a vehicle traveling on Route 252 with heavy front-end damage. The front-end damage to the vehicle was so significant that it would not have passed inspection. At the intersection, Officer [Alonso] observed that the vehicle was a Dodge Caravan with heavy front-end damage indented in a "V" pattern. The intersection where [Officer Alonso] made the observation about the front-end damage was well lit.

[Officer Alonso] turned onto Route 252 and made a U-turn into a position behind the damaged Caravan. Officer [Alonso] had arrived on Route 252 behind the vehicle within one minute of receiving the radio call.

Officer [Alonso] activated his lights and siren as the Dodge Caravan entered the intersection. The vehicle did not stop. Another [p]atrolman, Officer [Vandergrift], also responded to the area. Officer [Vandergrift] pulled up next to the vehicle with his siren and lights activated. At this point, both police vehicles had their lights and sirens activated but the driver still did not pull over. The Caravan did not stop until Officer [Vandergrift] put his police vehicle in such a position as to block the Caravan's path. The driver was not compliant until Officer [Vandergrift] impeded his travel. Ultimately, the vehicle was pulled over.

Officer [Vandergrift] approached the vehicle from the front and Officer [Alonso] approached the rear of the vehicle. Both [o]fficers told the driver, later identified as [Appellant], to shut off his vehicle and get out of the vehicle. The [o]fficers had to tell [Appellant] more than once to turn his vehicle off. [Appellant] would not follow the [o]fficers' orders. [Appellant] was not compliant prior to being removed from his vehicle [and placed] in handcuffs.

[After the officers removed Appellant from his vehicle], the [o]fficers turned him around to face his car. [Appellant]

- 2 -

said "what's going on?" The [o]fficers told him "you have just been in an accident" and they placed him in [handcuffs]. Officer [Alonso] smelled the odor of an alcoholic beverage. He asked [Appellant] if he had been drinking and [Appellant] answered "yes." Officer [Alonso] asked [Appellant] to recite the alphabet and he was unable to do so. The [o]fficer[s] observed that [Appellant] was not steady on his feet and[,] therefore, did not ask him to perform any other field sobriety tests. [Appellant] was placed under arrest for [driving under the influence of alcohol]. He was read the implied consent form at the scene of the vehicle stop. The [o]fficers asked [Appellant] if he would submit to blood testing and he said yes. [The officers] transported [Appellant] to Riddle Memorial Hospital where his blood was drawn and placed into an evidence locker.

(Trial Court's Findings of Fact and Conclusions of Law, filed February 14, 2014, at 1-2) (numbering omitted). Appellant was arrested and charged with DUI—highest rate, because his blood alcohol content registered greater than 0.16. This offense was Appellant's third DUI offense. On January 27, 2014, Appellant filed an omnibus pretrial motion to suppress physical evidence and statements. The court held a suppression hearing on January 30, 2014. On February 14, 2014, the court denied Appellant's motion.

Appellant's bench trial commenced on February 28, 2014, and the court found Appellant guilty of DUI—highest rate of alcohol. On March 4, 2014, the court sentenced Appellant to one (1) to three (3) years' imprisonment, followed by a consecutive term of two (2) years' probation. The court also deemed Appellant RRRI eligible at nine (9) months' imprisonment and ordered Appellant to complete a safe driving course and pay a fine. Appellant filed a timely notice of appeal on March 5, 2014. On

March 7, 2014, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant timely complied on March 14, 2014.

Appellant raises the following issues for our review:

> DID THE TRIAL COURT [ERR] WHEN IT DENIED APPELLANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE AND STATEMENTS AS THERE WAS NO REASONABLE SUSPICION TO STOP APPELLANT'S VEHICLE?
>
> DID THE TRIAL COURT [ERR] WHEN IT DENIED APPELLANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE AND STATEMENTS AS THERE WAS NO PROBABLE CAUSE TO ARREST APPELLANT?
>
> DID THE TRIAL COURT [ERR] WHEN IT DENIED APPELLANT'S MOTION TO SUPPRESS STATEMENTS AS APPELLANT WAS UNDER ARREST AND NOT GIVEN **MIRANDA**[2] WARNINGS?

(Appellant's Brief at 3).

We examine Appellant's issues subject to the following principles:

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.
>
> > [W]e may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the

---

[2] **Miranda v. Arizona**, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

court erred in reaching its legal conclusions based upon the facts.

*Commonwealth v. Williams*, 941 A.2d 14, 26-27 (Pa.Super. 2008) (*en banc*) (internal citations and quotation marks omitted). Further, "[i]t is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." *Commonwealth v. Clemens*, 66 A.3d 373, 378 (Pa.Super. 2013) (quoting *Commonwealth v. Gallagher*, 896 A.2d 583, 585 (Pa.Super. 2006)).

In his first issue, Appellant argues the police officers did not have reasonable suspicion to conduct a stop of Appellant's motor vehicle. Appellant asserts Officer Alonso unlawfully stopped Appellant's vehicle based solely on an anonymous 911 call, which indicated only the location of the accident and the direction the suspect vehicle was traveling. Appellant alleges the anonymous call did not provide the officer with reasonable suspicion to stop Appellant's vehicle, especially when the call did not provide a description of the suspect vehicle. Appellant concludes this Court must grant the motion to suppress and remand in accordance with that decision. We disagree.

Section 6308 of the Motor Vehicle Code provides:

**§ 6308.  Investigation by police officers**

\*    \*    \*

**(b)  Authority of police officer.—**Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has **reasonable suspicion** that a

- 5 -

> violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S.A. § 6308(b) (emphasis added).

> Traffic stops based on a reasonable suspicion[,] either of criminal activity or a violation of the Motor Vehicle Code under the authority of Section 6308(b)[,] must serve a stated investigatory purpose. In effect, the language of Section 6308(b)—"to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title"—is conceptually equivalent with the underlying purpose of a *Terry*[3] stop. … Mere reasonable suspicion will not justify a vehicle stop when the driver's detention cannot serve an investigatory purpose relevant to the suspected violation.

*Commonwealth v. Feczko*, 10 A.3d 1285, 1291 (Pa.Super. 2010), *appeal*

*denied*, 611 Pa. 650, 25 A.3d 327 (2011) (internal citations omitted).

> [T]o determine whether the police officer had reasonable suspicion, the totality of the circumstances must be considered. In making this determination, we must give due weight…to the specific reasonable inferences [the police officer] is entitled to draw from the facts in light of his experience. Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.

*Commonwealth v. Fulton*, 921 A.2d 1239, 1243 (Pa.Super. 2007), *appeal*

*denied*, 594 Pa. 686, 934 A.2d 72 (2007) (quoting *Commonwealth v.*

_____

[3] *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

***Hughes***, 908 A.2d 924, 927 (Pa.Super. 2006)) (internal citations and quotation marks omitted). If an objective view of the facts indicates an officer had specific, articulable facts that a traffic violation occurred, the law deems the stop reasonable. ***Commonwealth v. Chase***, 599 Pa. 80, 92, 960 A.2d 108, 114 (2008).

Instantly, the Commonwealth presented the following evidence at Appellant's suppression hearing: Officer Alonso received a police radio call reporting an accident in the area he was patrolling; the report indicated that a vehicle struck a utility pole and left the scene; approximately one (1) minute after Officer Alonso received the radio call, he observed Appellant's motor vehicle at an intersection only one and one-half (1½) miles away from the reported accident scene; Appellant's vehicle had heavy front-end damage in a "V" pattern, and Officer Alonso believed the pattern matched the damage that would occur if the vehicle had struck a utility pole; Officer Alonso did not believe the vehicle was safe to operate and did not believe the vehicle would pass inspection due to the significant front-end damage. Officer Alonso testified that the condition of Appellant's vehicle violated Pennsylvania motor vehicle inspection standards. (N.T. Suppression Hearing, 1/30/14, at 36). Officer Alonso, therefore, stopped Appellant's vehicle for investigatory purposes after learning of the recent motor vehicle accident and observing damage on Appellant's vehicle consistent with the accident. Based on the totality of the above circumstances, Officer Alonso

had reasonable suspicion to stop Appellant's vehicle. *See* 75 Pa.C.S.A. § 6308(b); *Fulton, supra*. Accordingly, the record supports the court's denial of Appellant's motion to suppress on this basis. *See Williams, supra*.

In his second and third issues combined, Appellant argues that the officers did not have probable cause to arrest him and failed to give Appellant proper *Miranda* warnings prior to his arrest. Appellant maintains he was not free to leave the scene when the officers stopped his vehicle, pulled him out, threw him against the vehicle, and immediately placed him in handcuffs. Appellant contends the officers noticed signs of intoxication and ordered Appellant to perform a field sobriety test only after they had placed Appellant in handcuffs. Appellant asserts the officers did not have any confirmation that Appellant had been involved in the accident, and they placed Appellant under arrest based solely on the unreliable information from the anonymous 911 call and the damage to Appellant's vehicle. Appellant claims the officers lacked probable cause to arrest Appellant, given the totality of these circumstances.

Appellant also argues the officers failed to advise him of his *Miranda* rights before they conducted a custodial interrogation. Appellant contends Officer Alonso read no *Miranda* warnings before he asked Appellant whether he had been drinking. Appellant claims Officer Alonso obtained Appellant's answer during an unlawful interrogation. Appellant concludes this Court must grant the motion to suppress and remand in accordance with that

decision. We disagree.

Contacts between the police and citizenry fall within three general classifications:

> The first [level of interaction] is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Goldsborough*, 31 A.3d 299, 305 (Pa.Super 2011), *appeal denied*, 616 Pa. 651, 49 A.3d 442 (2012) (quoting *Commonwealth v. Bryant*, 866 A.2d 1143, 1146 (Pa.Super. 2005), *appeal denied*, 583 Pa. 668, 876 A.2d 392 (2005)).

"Probable cause to arrest exists when the facts and circumstances within the police officer's knowledge and of which the officer has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Williams, supra* at 27 (quoting *Commonwealth v. Dommel*, 885 A.2d 998, 1002 (Pa.Super. 2005), *appeal denied*, 591 Pa. 722, 920 A.2d 831 (2007)) (quotation marks omitted). "Probable cause justifying a warrantless arrest is determined by the totality of the circumstances." *Williams, supra* at 27 (citations and quotation marks omitted). "The question we ask is not whether the officer's belief was

correct or more likely true than false. Rather, we require **only a probability**, and not a *prima facie* showing, of criminal activity." ***Commonwealth v. Thompson,*** 604 Pa. 198, 203, 985 A.2d 928, 931 (2009) (emphasis in original) (citations and quotation marks omitted).

"The key difference between an investigative and a custodial detention is that the latter 'involves such coercive conditions as to constitute the functional equivalent of an arrest.'" ***Commonwealth v. Gonzalez***, 979 A.2d 879, 887 (Pa.Super. 2009) (quoting ***Commonwealth v. Pakacki***, 587 Pa. 511, 519, 901 A.2d 983, 987 (2006)).

> The court considers the totality of the circumstances to determine if an [interaction] is investigatory or custodial, but the following factors are specifically considered: the basis for the detention; the duration; the location; whether the suspect was transported against his will, how far, and why; whether restraints were used; the show, threat or use of force; and the methods of investigation used to confirm or dispel suspicions.

***Commonwealth v. Teeter***, 961 A.2d 890, 899 (Pa.Super. 2008) (citation omitted). Nevertheless, our Supreme Court "has declined to hold that every time an individual is placed in handcuffs that such individual has been arrested." ***Commonwealth v. Guillespie***, 745 A.2d 654, 660 (Pa.Super. 2000) (citing ***Commonwealth v. Carter***, 537 Pa. 233, 247 n. 2, 643 A.2d 61, 67 n. 2 (1994), *cert. denied*, 514 U.S. 1005, 115 S.Ct. 1217, 131 L.Ed.2d 198 (1995)). "[F]or their safety, police officers may handcuff individuals during an investigative detention." ***Commonwealth v. Rosas***, 875 A.2d 341, 348 (Pa.Super. 2005), *appeal denied*, 587 Pa. 691, 897 A.2d

455 (2006) (finding suspect was not under arrest when trooper ordered suspect from vehicle and placed him in handcuffs).  Moreover, "when an officer detains a vehicle for violation of a traffic law, it is inherently reasonable that [the officer] be concerned with safety and, as a result, may order the occupants of the vehicle to alight from the car."  ***Id.***

Additionally, in evaluating whether an officer should have provided ***Miranda*** warnings during an interaction, "a court must consider the totality of the circumstances…[and] keep in mind that not every statement made by an individual during a police encounter amounts to an interrogation. Volunteered or spontaneous utterances by an individual are admissible even without ***Miranda*** warnings."  ***Williams, supra*** at 30 (quoting ***Commonwealth v. Gaul***, 590 Pa. 175, 180, 912 A.2d 252, 255 (2006), *cert. denied*, 552 U.S. 939, 128 S.Ct. 43, 169 L.Ed.2d 242 (2007)). Motorists have statutory obligations to stop and provide officers with information about an accident when the accident results in damage to any motor vehicles or other property.  ***Williams, supra*** at 31 (citing 75 Pa.C.S.A. §§ 3743, 3744).  Thus, a motorist is not in custody for ***Miranda*** purposes during the time he is obligated to remain and provide the required information about an accident.  ***Id.*** (citing ***Commonwealth v. Gonzalez***, 519 Pa. 116, 546 A.2d 26 (1988)).

Instantly, a police dispatch informed Officer Alonso that a vehicle recently had hit a utility pole and left the scene of the accident.  Officer

- 11 -

Alonso independently observed Appellant's vehicle in the general area of the accident only one (1) minute after he received the radio call. Officer Alonso testified that Appellant's vehicle caught his attention because the damage on the front end of the vehicle consisted of a significant intrusion in a "V" pattern. (N.T. Suppression Hearing, 1/30/14, at 13). Appellant refused to stop when police activated their lights and sirens and continued to drive at a low rate of speed. The officers forced Appellant to stop his vehicle by blocking the roadway with Officer Vandergrift's patrol car. Additionally, Appellant refused to obey the officers' orders to exit Appellant's vehicle. Officer Alonso testified that, based on Appellant's failure to comply, Officer Alonso was unsure of Appellant's mental state or potential reasons for "running." (*Id.* at 39-40). Based on Appellant's failure to comply with multiple police orders and the officers' reasonable concern for safety, the officers removed Appellant from his vehicle and placed him in handcuffs to conduct an investigatory detention. *See Rosas, supra*; *Guillespie, supra* (placing individual in handcuffs does not always constitute arrest).

After the officers removed Appellant from his vehicle, Officer Alonso smelled an odor of alcohol coming from Appellant. Officer Alonso asked Appellant if he had been drinking, and Appellant responded "yes." Appellant failed a field sobriety test, and the officers decided not to ask Appellant to perform any other tests when they observed Appellant was unsteady on his feet. *See Williams, supra* (finding police may utilize experience and

personal observations to render opinions as to whether suspects are intoxicated). Based on the damage to Appellant's vehicle, the officers' observations of Appellant, and their knowledge of the recent hit-and-run accident, the officers had probable cause to arrest Appellant for driving under the influence of alcohol. ***See id.***; ***Thompson, supra***.

Furthermore, prior to this arrest, Appellant was not in custody for purposes of ***Miranda***. The officers initially attempted to detain Appellant to gain more information about the damage to his car, which was consistent with the police dispatch's description of the accident. ***See Williams, supra***. Additionally, Appellant had a statutory obligation to stop and provide the officers with information about the damage to his vehicle and if it was related to the reported accident. ***See id.*** Thus, Appellant was subject to only an investigatory detention under these circumstances, when he answered Officer Alonso's question about whether Appellant had been drinking. ***See id.*** Therefore, Appellant's statement did not require ***Miranda*** warnings. ***Id.*** Accordingly, the record supports the court's denial of Appellant's motion to suppress. ***See id.***

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/31/2014</u>