J-S43007-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| REINALDO GAFFNEY, | |
| Appellant | No. 1521 EDA 2014 |

Appeal from the Judgment of Sentence of January 29, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): MC-51-CR-0037974-2012

BEFORE:  GANTMAN, P.J., PANELLA AND OLSON, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED SEPTEMBER 30, 2015**

Appellant, Reinaldo Gaffney, appeals from the judgment of sentence entered on January 29, 2014.  We affirm.

The trial court ably summarized the underlying facts and procedural posture of this case.  As the trial court explained:

> [Appellant] was [charged with] possession of a controlled substance.[1]  On November 20, 2013, [Appellant] litigated a motion to suppress evidence before [Philadelphia Municipal Court] Judge James M. DeLeon.  That motion was denied.  Judge DeLeon recused himself and [Appellant] finally proceeded to trial before [Philadelphia Municipal Court] Judge Karen Simmons on January 29, 2014. [Appellant] was found guilty by the court and sentenced to [12] months [of] probation. . . .

---

[1] 35 P.S. § 780-113(a)(16).

A [petition for a] writ of *certiorari* to the court of common pleas was filed on behalf of [Appellant] and litigated before [the trial court] on April 25, 2014. After oral argument on the issues presented, [the trial court] denied the writ and found no error in the municipal court's decision to deny [Appellant's] suppression [motion]. . . . In addition, [the trial court] denied [Appellant's] motion to dismiss based upon [the alleged] insufficiency of the evidence.

At the suppression hearing[] on November 20, 2013, Philadelphia Police Officer Michael Haas testified that he was on duty on September 16, 2012, at approximately 7:39 p.m., when he encountered [Appellant] driving southbound on 59th Street crossing Thompson Street in Philadelphia. [N.T. Suppression Hearing, 11/20/13, at 6].

[As Officer Haas testified, he] observed [Appellant] utilizing a cell phone [to either "text[] or read[]"] while driving. [Specifically, Officer Haas testified:

A: I observed [Appellant] driving southbound on 59th Street, crossing the intersection of Thompson Street, driving with a cell phone in hand, either texting or reading. He continued southbound, and I signaled the vehicle to stop.

Q: Can I ask you a question? It's 7:39 p.m.; how did you notice the cell phone?

A: I saw the glow of the cell phone lighting up his face, so –

Q: And then how – where was he holding the cell phone – his position?

A: If I were in the driver's seat, if I was [Appellant], he was holding the cell phone up like this.

Q: So, it's visible to you in your car?

A: Yeah, he wasn't holding it down by his waist; he was holding it up here.

*Id.* at 6-7].

- 2 -

Based upon this [apparent] motor vehicle [code] violation, [Officer Haas] signaled the car to stop. The operator of the vehicle, [Appellant], complied.

[Officer Haas testified:

> I exited out of the patrol vehicle. I was the driver that night. My partner, Officer Endarzo (ph) was the passenger of the vehicle. He approached on the passenger side, I approached on the driver's side. As I was approaching, I saw [Appellant] with his hand around the gear shifter of the vehicle.
>
> The gear shifter in this – it was a silver Impala – the gear shifter was in between the two seats. He had his hand down there by that. I told him to show – I believe I told him to show me his hands. I say that to everybody who I stop, just, "Let me see your hands." I saw his hands down by the compartment. It appeared that he was closing the seal of it.
>
> When he didn't show me his hands, I was concerned for my safety.[2] Because he didn't show me his hands, I thought he was possibly concealing something in that compartment. I've been to training that has taught me that certain parts of the car are used to conceal weapons and narcotics, like natural voids and natural compartments in the vehicle, such as gear shifter[s], such as light switches that can be pulled out easily and resealed.
>
> So I recognized that. My partner then, I believe, observed red – we thought it was blood on the side of the car. We pulled him out of the car for a safety frisk,

---

[2] Officer Haas testified that Appellant did not comply with the demand to show his hands "for several seconds" and that, during this time, Appellant's right hand "was still down by the gear shifter." N.T. Suppression Hearing, 11/20/13, at 14. Further, Officer Haas testified that the vehicle had an automatic transmission. *Id.*

and at that point, we believed there to be possible narcotics or weapons in [the gear shifter].

*Id.* at 7-8].

Officer Haas [] requested a supervisor to arrive and also requested K-9 support to alert for the possibility of concealed drug activity. [As Officer Haas testified, Appellant was handcuffed while they "waited there for the dog." *Id.* at 12. Further, Officer Haas testified that Appellant was driving a rental vehicle. *Id.* at 14]. . . .

Philadelphia [Police Officer] John Callahan of the Philadelphia K-9 Unit testified that on September 16, [2012], he was called to the area of 5900 West Thompson Street and deployed his canine (a trained narcotic odor detector) to the exterior of [Appellant's] rental vehicle. [Officer Callahan testified that, d]uring the course of that exterior sniff, . . . "K-9 Blackjack indicated and then subsequently alerted to the odor of controlled substances that he's been trained to recognize, at the driver's door seams. I related this information to the officers. I gave them my qualifications, which consist of mine and the dog's biography, in a brief format, and I resumed patrol." [*Id.* at 20.] Officer Callahan further testifie[d]:

> While the dog is not specifically trained to find pills, because frankly, that would take forever, it is not uncommon for the dog – any narcotics dog in my experience, the three that I have worked [with], it is not uncommon for these dogs to alert to a derivative of opium. Heroin is a derivative of opium, so are oxycodone, Endocet, and those types of pain pills.
>
> So, while we don't specifically hide those pills and train the dog to locate them, it is not uncommon, based upon my experience and my training, that the dog would locate them and alert to them.

*Id.* at 23-24.

Following Officer Callahan's testimony, the Commonwealth rested its case and the trial court denied Appellant's motion to suppress.

> Appellant proceeded to trial and, during the trial, the Commonwealth presented essentially the same evidence as during the pre-trial motion hearing. Further, at trial, the parties stipulated that,] if Detective Slobodian were to testify, he would testify that he recovered from the Chevy Impala on September 16, 2012, below the shifter knob[,] a clear sandwich baggie, knotted, that contained nine white pills marked 10/325 and E712, pills identified as Endocet, a generic form of Percocet, which was placed on property receipt number 3058388. [N.T. Trial, 1/29/14, at 23].

Trial Court Opinion, 1/22/15, at 1-5 (some internal capitalization and citations omitted).

On February 17, 2014, Appellant filed a timely petition for writ of *certiorari* in the Philadelphia County Court of Common Pleas. Within the petition, Appellant claimed:

> (1) the initial traffic stop was not supported by reasonable suspicion that a violation of the Motor Vehicle Code occurred; (2) the subsequent detention for purposes of subjecting the vehicle to a search by the K-9 unit was unsupported by probable cause that there were narcotics in the car; (3) even if the officer had reasonable suspicion that [Appellant] was armed and dangerous, he would only be entitled to a **Terry**[3] frisk of his person and, at most, the interior of the car, but that reasonable suspicion is insufficient to hold [Appellant] in custody while subjecting the vehicle to a search by a dog trained only to detect narcotics and not weapons; and, (4) evidence adduced at trial was insufficient to prove beyond a reasonable doubt that [Appellant] had constructive possession of the narcotics recovered from the vehicle.

Appellant's Petition for Writ of *Certiorari*, 2/27/14, at 1-2.

_____

[3] **See Terry v. Ohio**, 392 U.S. 1 (1968).

- 5 -

On April 25, 2014, the trial court held a hearing on Appellant's petition for writ of *certiorari* and, at the beginning of the hearing, Appellant conceded that reasonable suspicion existed to support the initial stop of his vehicle. ***See*** N.T. Hearing, 4/25/14, at 3-4 (Appellant's Attorney: "I don't know if [Your Honor] had a copy of our writ. There are two issues. There are the issues of the actual probable cause. Quite frankly, I can see reasonable suspicion to stop the car. I mean, **they had that** to stop the car based upon a traffic stop") (emphasis added); N.T. Hearing, 4/25/14, at 5 (Appellant's Attorney: "[Officer Haas] sees the glow of a cellphone. He stops him for reasonable suspicion of violation of a motor vehicle code. I can see that part, Your Honor").

The trial court denied Appellant's petition on April 25, 2014 and Appellant filed a timely notice of appeal to this Court. Appellant asserts two claims on appeal:

> 1. Did not the lower court err in failing to grant [A]ppellant's motion to suppress physical evidence, nine pills, where (i) the police conducted a traffic stop without reasonable suspicion; (ii) the police unconstitutionally prolonged the seizure; and (iii) the record of the motion to suppress is silent as to what evidence was seized, how and from where, and therefore the Commonwealth could not possibly have met its burden under Pa.R.Crim.P. 581(H)?
>
> 2. Was not the evidence insufficient to establish that [A]ppellant constructively possessed nine prescription pills that were hidden in a rental car?

Appellant's Brief at 4.

We will address Appellant's issues in the order raised above.[4]

_____

[4] Within the Commonwealth's brief in opposition, the Commonwealth argues that Appellant's challenge to the suppression ruling fails because Appellant did not establish that he possessed a reasonable expectation of privacy in the vehicle. Commonwealth's Brief at 12. Specifically, the Commonwealth argues, since it produced evidence that Appellant was driving a rental vehicle and since Appellant did not demonstrate that he "was the named lessee of the rental[] or that he had permission to drive the vehicle," Appellant failed to establish that he had an expectation of privacy in the vehicle. *Id.* at 10-14. Therefore, as Appellant failed to prove that he had an expectation of privacy in the vehicle, the Commonwealth argues that Appellant's challenge to the suppression court's ruling must fail entirely. *Id.*; *see Commonwealth v. Jones*, 874 A.2d 108, 120 (Pa. Super. 2005) (holding: where the defendant was the driver of a rental car, the defendant did not have an expectation of privacy in the car because the "return date [on the rental automobile] had expired, [the defendant] was not the named lessee, the named lessee was not in the automobile, and [the defendant] was not authorized to drive the automobile").

The Commonwealth's argument lacks merit. On appeal, Appellant claims that the initial traffic stop – and the resulting **seizure of his person** – was unsupported by either reasonable suspicion or probable cause. Thus, with respect to this claim, it is of no moment that Appellant might have failed to demonstrate that he had a reasonable expectation of privacy **in the vehicle**: if the initial seizure of Appellant's person were illegal, the evidence obtained pursuant to the illegal seizure of Appellant's person would be tainted and the evidence would need to be suppressed. *See Brendlin v. California*, 551 U.S. 249, 263 (2007) (holding that a vehicle passenger was "seized from the moment [the driver's] car came to a halt on the side of the road"); *see also Brendlin*, 551 U.S. at 259, *quoting* 6 W. LaFave, Search and Seizure § 11.3(e) at 194, 195, and n.227 (4th ed. 2004 and Supp 2007) (noting that, even though a passenger does not have an expectation of privacy in another person's vehicle, "[i]f either the stopping of the car, the length of the passenger's detention thereafter, or the passenger's removal from it are unreasonable in a Fourth Amendment sense, then surely the passenger has standing to object to those constitutional violations and to have suppressed any evidence found in the car which is their fruit").

"Once a motion to suppress evidence has been filed, it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights." *Commonwealth v. Wallace*, 42 A.3d 1040, 1047-1048 (Pa. Super. 2012) (*en banc*); *see also* Pa.R.Crim.P. 581(H). With respect to an appeal from the denial of a motion to suppress, our Supreme Court has declared:

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing the ruling of a suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record. . . . Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Eichinger*, 915 A.2d 1122, 1134 (internal citations omitted). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." *Commonwealth v. Gallagher*, 896 A.2d 583, 585 (Pa. Super. 2006). Moreover, we note that our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing. *In re L.J.*, 79 A.3d 1073, 1087 (Pa. 2013). [5]

---

[5] On October 30, 2013, our Supreme Court decided *In re L.J.* In *L.J.*, our Supreme Court held that our scope of review from a suppression ruling is

*(Footnote Continued Next Page)*

Appellant first claims that the trial court erred when it denied his suppression motion because the initial stop of his vehicle was not supported by reasonable suspicion. This claim is waived because, during the hearing on Appellant's petition for writ of *certiorari*, Appellant conceded that the initial stop of his vehicle was proper and was supported by reasonable suspicion. N.T. Hearing, 4/25/14, at 3-4 and 5; **Commonwealth v. Coleman**, 19 A.3d 1111, 1118-1119 (Pa. Super. 2011) (on appeal, the appellant claimed that the evidence before the municipal court was insufficient to support his convictions; the Superior Court held that the claim was waived because the appellant failed to raise the claim in his petition for a writ of *certiorari* to the court of common pleas; the Superior Court declared, "[w]hile [a]ppellant could have raised his sufficiency of the evidence claim for the first time in his petition for a writ of *certiorari*, he cannot, having failed to raise it at the first appellate level, raise it now"); Pa.R.A.P. 302(a) ("[i]ssues not raised in the lower court are waived and

_____
*(Footnote Continued)*

limited to the evidentiary record that was created at the suppression hearing. **In re L.J.**, 79 A.3d at 1087. Prior to **L.J.**, this Court routinely held that, when reviewing a suppression court's ruling, our scope of review included "the evidence presented both at the suppression hearing and at trial." **See Commonwealth v. Charleston**, 16 A.3d 505, 516 (Pa. Super. 2011), *quoting* **Commonwealth v. Chacko**, 459 A.2d 311, 317 n.5 (Pa. 1983). **L.J.** thus narrowed our scope of review of suppression court rulings to the evidence presented at the suppression hearing. In this case, Appellant's suppression hearing occurred after **L.J.** was decided. Therefore, the procedural rule announced in **L.J.** applies to the case at bar.

cannot be raised for the first time on appeal"); ***Commonwealth v. Urbina***, 434 A.2d 157, 158 n.3 (Pa. Super. 1981) ("[t]o be preserved for appellate review, an issue must not only be raised [in the lower court], but also, not abandoned when the case is argued to the lower court"); ***see also*** 5 Am. Jur. 2d Appellate Review § 543 ("[c]ourts consider claims abandoned at oral argument to be waived").

Next, Appellant claims that the suppression court's ruling was erroneous because "the police unconstitutionally prolonged the seizure." Appellant's Brief at 17. Specifically, within Appellant's brief, Appellant claims that the police did not have "probable cause to detain [Appellant] in a police car while a K-9 unit was called to the scene" and that the police did not have "probable cause to detain [Appellant] even after the [positive] dog sniff of [the vehicle]." ***Id.*** at 18-19. Appellant failed to raise the latter sub-claim in his petition for writ of *certiorari*. As such, the sub-claim is waived. ***Coleman***, 19 A.3d at 1118-1119; Pa.R.A.P. 302(a).

With respect to Appellant's claim that the police did not have "probable cause to detain [Appellant] in a police car while a K-9 unit was called to the scene," the claim fails automatically as the trial court never held that, at this particular point in time, the police had probable cause to believe that Appellant committed a crime. Rather, as the trial court concluded, the police were entitled to detain Appellant and await the K-9 unit because the police had **reasonable suspicion** to believe that Appellant possessed narcotics and because the police were concerned for their safety, given that they

reasonably suspected Appellant had a weapon and, further, believed that Appellant had blood on his car. Trial Court Opinion, 1/22/15, at 6-7. Since Appellant developed no independent argument or claim that the trial court erred in its "reasonable suspicion" determination or analysis, Appellant's claim fails.[6, 7]

_____

[6] Within Appellant's brief, Appellant declares – in a conclusory footnote – that "[e]ven if only reasonable suspicion were required, it too was lacking for these same reasons." Appellant's Brief at 18 n.4. This undeveloped declaration is unsupported by meaningful legal argument and is, therefore, waived. *Commonwealth v. Spotz*, 716 A.2d 580, 585 n.5 (Pa. 1999) ("an issue will be deemed to be waived when an appellant fails to properly explain or develop it in his brief").

[7] Within Appellant's brief, Appellant does not claim that the trial court erred in determining that Appellant was subject to an investigative detention during the time that the police waited for the K-9 unit to arrive on scene. *See* Appellant's Brief at 17-19; *see also* Trial Court Opinion, 1/22/15, at 6-7 ("In the present case, Officer Haas properly stopped [A]ppellant's vehicle for a motor vehicle violation. That encounter would have ended with a citation had [Appellant] not made furtive moves within the vehicle. The officer's decision to extract [Appellant] from his vehicle for safety reasons, his training [which led him to believe] that criminal activity may be afoot, along with his proactive decision to call for a K-9 alert team, resulting in a positive hit and ultimate search warrant were all reasonable under the totality of the circumstances"). To the extent Appellant attempts to claim – for the first time in his reply brief – that the police illegally subjected him to a *de facto* arrest without probable cause, the claim is waived. *Commonwealth v. Basemore*, 744 A.2d 717, 726-727 (Pa. 2000) ("A reply brief [] is an inappropriate means for presenting a new and substantively different issue than that addressed in the original brief"); *see also Commonwealth v. Rosas*, 875 A.2d 341, 348 (Pa. Super. 2005) ("While we acknowledge that Trooper Henneman ordered Rosas out of the car and placed him in handcuffs, such facts, by themselves, do not support the conclusion that Rosas was under arrest. It is well-established that 'when an officer detains a vehicle for violation of a traffic law, it is inherently reasonable that he or she be concerned with safety and, as a result, may
*(Footnote Continued Next Page)*

Next, Appellant claims that the suppression court erred in denying his motion because, "[a]t the suppression [hearing], the Commonwealth presented no evidence as to what was seized, how[,] and from where[; t]hus the Commonwealth failed to meet its burden of proving that the physical evidence was recovered constitutionally." Appellant's Brief at 20-21. Again, this claim is waived because Appellant failed to raise the claim in his petition for writ of *certiorari*. **Coleman**, 19 A.3d at 1118-1119; Pa.R.A.P. 302(a).

For Appellant's final claim on appeal, Appellant contends that the evidence was insufficient to prove that he "constructively possessed nine prescription pills that were hidden in a rental car." Appellant's Brief at 23. This claim fails.

We review Appellant's sufficiency of the evidence challenge under the following standard:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at

*(Footnote Continued)* ─────────────

order the occupants of the vehicle to alight from the car.' **Commonwealth v. Rosa**, 734 A.2d 412, 414 (Pa. Super. 1999) (citation omitted). Furthermore, for their safety, police officers may handcuff individuals during an investigative detention. **See**, **e.g.**, **Commonwealth v. Guillespie**, 745 A.2d 654, 660-661 (Pa. Super. 2000) (act of handcuffing suspects during investigatory detention 'was merely part and parcel of ensuring the safe detaining of the individuals during the lawful **Terry** stop' and did not constitute an arrest). In addition, it must be remembered that 'every traffic stop and every **Terry** stop involves a stop and period of time during which the suspect is not free to go but is subject to the control of the police officer detaining him.' **Id.** at 660.").

trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Brown*, 23 A.3d 544, 559-560 (Pa. Super. 2011) (*en banc*), *quoting* *Commonwealth v. Hutchinson*, 947 A.2d 800, 805-806 (Pa. Super. 2008).

According to Appellant, the evidence was insufficient to support his simple possession conviction because: there was no evidence that Appellant rented the vehicle; "many other individuals had access to the [rental] car;" and, the parties stipulated that the narcotics were discovered "below the shifter knob," but, at trial, Officer Haas testified that he saw Appellant close "the seal of the center console." Appellant's Brief at 23-26. These claims also fail.

"In [] possession cases, the Commonwealth may meet its burden by showing actual, constructive, or joint constructive possession of the

- 13 -

contraband." ***Commonwealth v. Thompson***, 428 A.2d 223, 224 (Pa. Super. 1981). Actual possession is proven "by showing . . . [that the contraband was] found on the [defendant's] person." ***Commonwealth v. Macolino***, 469 A.2d 132, 134 (Pa. 1983). If the contraband is not discovered on the defendant's person, the Commonwealth may satisfy its evidentiary burden by proving that the defendant had constructive possession of the contraband. ***Id.*** "Constructive possession has been defined as the ability to exercise a conscious dominion over the illegal [contraband]: the power to control the contraband and the intent to exercise that control." ***Id.***

With respect to the element of "knowledge" in a possessory offense, this Court has held:

> an awareness of the presence of the items which [the defendant] was accused of having [is] an essential element of his supposed intent to control. But this knowledge need not be proven by his admission of such knowledge, or by testimony of his associates that he saw these articles. **The defendant's knowledge of the presence of these articles may be inferred from all the surrounding circumstances**.

***Commonwealth v. Gladden***, 311 A.2d 711, 712 (Pa. Super. 1973) (*en banc*) (emphasis added) (internal quotations and citations omitted) (some internal capitalization omitted).

Viewing the evidence in the light most favorable to the Commonwealth, we conclude that the evidence was sufficient to prove that

Appellant constructively possessed the narcotics found "below the shifter knob." Indeed, as the trial court noted:

> The evidence in the instant case . . . showed that: 1) [Appellant] was the driver and fail[ed] to raise his hands when ordered . . . and 2) [Appellant] was seen by [Officer] Haas placing his hands in the exact area where the nine [Endocet pills] were found after the search was conducted.
>
> The evidence supported the [trial] court's inference that [Appellant] constructively possessed the drugs found in the vehicle. [Appellant's] exercise of dominion and control over those drugs was demonstrated by his attempts to hide the contraband within his reach.

Trial Court Opinion, 1/22/15, at 8.

We agree with the trial court and conclude that the evidence was sufficient to prove that Appellant constructively possessed the contraband found in the vehicle.[8] Appellant's claim to the contrary fails.

_____

[8] Within his brief, Appellant notes that, at trial, Officer Haas testified that he saw Appellant close "the seal of the center console." According to Appellant, since the narcotics were found "below the shifter knob" and since "'the seal of the center console' and the 'shifter knob' are not the same," the evidence was insufficient to support his convictions. Appellant's Brief at 25-26. This semantic argument fails. True, Officer Haas' trial testimony can be viewed as slightly imprecise. However, as Officer Haas testified at trial: "I observed [Appellant] reaching down towards the center console area where the gear shifter is. I observed him kind of like close – it appeared that he like closed the center console, it's a bunch of plastic, and you can kind of lift it up and seal it. I saw him seal that." N.T. Trial, 1/29/14, at 7-8. Viewing this testimony in the light most favorable to the Commonwealth, the testimony supports the trial court's determination that Officer Haas saw Appellant "plac[e] his hands in the exact area where the nine [pills of Endocet] were found after the search was conducted." Trial Court Opinion, 1/22/15, at 8. Certainly, in this case, the narcotics were discovered "below the shifter knob." Since Officer Haas' trial testimony declares that he saw

*(Footnote Continued Next Page)*

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/30/2015

---

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯

Appellant closing "the seal of the center console" – and since the center console lies "below the shifter knob" – Officer Haas' testimony supports the trial court's declaration that Officer Haas saw Appellant "plac[e] his hands in the exact area where the nine [pills of Endocet] were found after the search was conducted." Trial Court Opinion, 1/22/15, at 8.