J. A29006/15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                                    :          PENNSYLVANIA
                   v.              :
                                      :
JUSTIN LEE HERP,               :         No. 1900 WDA 2014
                                      :
             Appellant     :

Appeal from the Judgment of Sentence, November 13, 2014,
in the Court of Common Pleas of Butler County
Criminal Division at No. CP-10-CR-0000210-2014

BEFORE:  FORD ELLIOTT, P.J.E., BOWES AND MUSMANNO, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:       **FILED JANUARY 07, 2016**

Justin Lee Herp appeals from the judgment of sentence entered on November 13, 2014, in the Court of Common Pleas of Butler County following the trial court's denial of his omnibus pre-trial motion to suppress and his conviction of driving under the influence ("DUI")-general impairment, 75 Pa.C.S.A. § 3802(a)(1) and DUI-highest rate, 75 Pa.C.S.A. § 3802(c).  He was sentenced to 30 days to 6 months of incarceration and a $750 fine.  We affirm.

On December 26-27, 2013, Pennsylvania State Trooper Christopher Cialella was working the 11 p.m. to 7 a.m. shift on patrol, in uniform, and in a marked vehicle with Trooper Knirnschild.  It had snowed earlier that day.  There was snow cover on the ground and the roads were slick.  At 3:20 a.m., while traveling eastbound on State Route 422,

Trooper Cialella observed appellant performing "donuts" with his Jeep Cherokee SUV in the private parking lot of the Assembly of God Church. (Transcript of proceedings, 5/16/14 at 8.) Appellant's vehicle was spinning around. No other vehicles were in the parking lot, and the parking lot did not have any trees or light posts. There were commercial and residential structures in the immediate area around the church. Trooper Cialella found it to be "suspicious" because it was 3:30 in the morning. (*Id.*) He also believed that in doing donuts, appellant was "a reckless danger to himself" and that "[h]e could have flipped the vehicle." (*Id.* at 18.) Trooper Cialella observed appellant's vehicle abruptly leave the parking lot. The trooper followed appellant one quarter of a mile on Route 422 and activated the emergency lights on his vehicle just as appellant turned left onto Golden Lane, a one-lane road. (*Id.* at 21.) Appellant "was waving his hands out the driver's side window," traveled approximately 60 yards or about 30-45 seconds, passing several places he could have pulled over and stopped his car, and then eventually stopped at his residence. (*Id.* at 13, 22, 33, 36.)

Appellant was ordered out of the vehicle at gunpoint. When appellant exited his vehicle, Trooper Cialella's partner patted appellant down for weapons. Appellant informed the police that he had a large knife on his person. The troopers then handcuffed appellant from behind on the hood of his car. After appellant was handcuffed, Trooper Cialella asked appellant

about doing donuts in the church parking lot. Appellant said that he "was having fun." (*Id.* at 15.) Trooper Cialella detected the "faint odor" of alcohol. (*Id.*) Besides the faint smell of alcohol, Trooper Cialella did not observe any other indicia of impairment. Appellant did not have bloodshot eyes; he was not staggering or slurring his speech. (*Id.* at 25.) Trooper Cialella asked appellant if he had anything to drink, and appellant told him he had "a few drinks." At that point, Trooper Cialella administered a preliminary breath test ("PBT") which registered positive. Trooper Cialella did not conduct standard field sobriety tests because of the weather conditions. Appellant was placed in the patrol car and transported to the hospital for a consented blood draw. Appellant's blood alcohol content was 0.162 percent.

Appellant was charged with DUI-general impairment, DUI-highest rate, failing to stop upon request or signal of a police officer[1] and reckless driving.[2]

On April 21, 2014, appellant filed an omnibus pre-trial motion challenging the propriety of the vehicle stop and seeking to suppress the evidence obtained therefrom. Specifically, appellant argued that the troopers lacked reasonable suspicion to justify the initial traffic stop. He was alone in the parking lot and posed no risk of danger to himself or anyone

---

[1] 75 Pa.C.S.A. § 6308(a).

[2] 75 Pa.C.S.A. § 3736(a).

else. He further argued that once his vehicle was stopped, a sufficient basis did not exist to order appellant out of his vehicle at gunpoint, pat him down for weapons, and handcuff him. He contends that he was subjected to the functional equivalent of an arrest, yet he was not given his **Miranda**[3] warnings; therefore, the odor of alcohol on his breath, the results of the PBT, and any statements he made about having a "few drinks" should be suppressed. He also argued that the troopers did not have probable cause to arrest him and transport him for chemical testing because, besides the faint odor of alcohol on his breath, there were no other indicia of impairment such as erratic driving, bloodshot eyes, staggering, or slurring.

A suppression hearing was held on May 16, 2014. At the hearing, Trooper Cialella testified on cross-examination, that he stopped appellant because he observed appellant driving in a reckless manner. He handcuffed appellant because: "it was a high risk stop"; appellant "did not stop immediately"; he was "waving his hands out the window"; and the stop occurred in a dark and unfamiliar place. (**Id.** at 24.)

The trial court denied appellant's suppression motion on August 1, 2014.

A stipulated non-jury trial was conducted on October 31, 2014. The trial court considered the testimony of Trooper Cialella which was given at the suppression hearing and a video recording from the officer's patrol car.

---

[3] **Miranda v. Arizona**, 384 U.S. 436 (1966).

The trial court found appellant guilty of DUI-general impairment, under 75 Pa.C.S.A. §§ 3802(a)(1), and DUI-highest rate, under § 3802(c), and not guilty of the remaining charges. On November 13, 2014, appellant was sentenced to a term of 30 days to 6 months' imprisonment plus a $750 fine. This timely filed appeal followed. Both appellant and the trial court complied with the mandates of Pa.R.A.P. 1925.

On appeal, appellant raises the following issues:

> I. WHETHER THE SUPPRESSION COURT ERRED IN DETERMINING THAT THE STOP OF THE APPELLANT'S MOTOR VEHICLE WAS LAWFUL AND; SUPPORTED BY PROBABLE CAUSE THAT A VEHICLE CODE VIOLATION HAD OCCURRED; OR REASONABLE SUSPICION THAT A VEHICLE VIOLATION WAS ONGOING THAT REQUIRED ADDITIONAL INVESTIGATION[?]
>
> II. WHETHER THE SUPPRESSION COURT ERRED IN ITS DETERMINATION THAT THE APPELLANT WAS NOT UNLAWFULLY DETAINED WHEN HE WAS IMMEDIATELY CUFFED UPON REMOVAL FROM HIS MOTOR VEHICLE BY THE PENNSYLVANIA STATE POLICE[?]
>
> III. WHETHER THE SUPPRESSION COURT ERRED IN ITS DETERMINATION THAT THE PENNSYLVANIA STATE POLICE HAD SUFFICIENT PROBABLE CAUSE TO PLACE THE APPELLANT IN THE STATE POLICE CRUISER AND TRANSPORT HIM FOR CHEMICAL TESTING[?]

Appellant's brief at 4-5.

Our scope and standard for reviewing an order denying a motion to suppress is as follows:

We are limited to determining whether the lower court's factual findings are supported by the record and whether the legal conclusions drawn therefrom are correct. We may consider the evidence of the witnesses offered by the Commonwealth, as verdict winner, and only so much of the evidence presented by defense that is not contradicted when examined in the context of the record as a whole. We are bound by facts supported by the record and may reverse only if the legal conclusions reached by the court were erroneous.

***Commonwealth v. Hughes***, 908 A.2d 924, 927 (Pa.Super. 2006).

**I.**

First, appellant contends that the suppression court erred in determining that the initial stop of his vehicle was lawful. He contends that the troopers lacked probable cause to conclude that a vehicle code violation was occurring.

In Pennsylvania, the authority that addresses the requisite cause for a traffic stop is statutory and is found at 75 Pa.C.S.A. § 6308(b), which provides:

**(b)** **Authority of police officer.--**Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S. § 6308(b). In **Commonwealth v. Feczko**, 10 A.3d 1285 (Pa.Super.2010) (**en banc**), this Court, consistent with our Supreme Court's clarification of constitutional principles under the Fourth Amendment and Article I, Section 8 of the Pennsylvania Constitution, stated with respect to § 6308(b):

> In light of our Supreme Court's interpretation of the current language of Section 6308(b), we are compelled to conclude that the standards concerning the quantum of cause necessary for an officer to stop a vehicle in this Commonwealth are settled; notwithstanding any prior diversity on the issue among panels of this Court. Traffic stops based on a reasonable suspicion: either of criminal activity or a violation of the Motor Vehicle Code under the authority of Section 6308(b) must serve a stated investigatory purpose. (footnote and citation omitted).

> . . . .

> Mere reasonable suspicion will not justify a vehicle stop when the driver's detention cannot serve an investigatory purpose relevant to the suspected violation. In such an instance, "it is encumbent [sic] upon the officer to articulate specific facts possessed by him, at the time of the questioned stop, *which would provide probable cause to believe that the vehicle or the driver was in violation of some provision of the Code.*" [**Commonwealth v.**] **Gleason** [567 Pa. 111], 785 A.2d [983,] 989 [(Pa.2001)] (citation omitted) [**superseded by statute**, Act of Sept. 30, 2003, P.L. 120, No. 24, § 17 (amending 75 Pa.C.S.A. § 6308(b))].

> *Id.* at 1290–1291 (emphasis added in *Gleason*). Accordingly, when considering whether reasonable suspicion or probable cause is required constitutionally to make a vehicle stop, the nature of the violation has to be considered. If it is not necessary to stop the vehicle to establish that a violation of the Vehicle Code has occurred, an officer must possess probable cause to stop the vehicle. Where a violation is suspected, but a stop is necessary to further investigate whether a violation has occurred, an officer need only possess reasonable suspicion to make the stop.

*Commonwealth v. Salter*, 121 A.3d 987, 992-993 (Pa.Super. 2015) (emphasis in original).

In this case, Trooper Cialella testified that he stopped appellant's vehicle because he observed appellant driving recklessly. 75 Pa.C.S.A. § 3736 provides:

> **Reckless driving.** Any person who drives any vehicle in willful or wanton disregard for the safety of persons or property is guilty of reckless driving.

Appellant argues that doing donuts does not constitute "reckless driving." We disagree. Trooper Cialella testified that by doing donuts, appellant was "a reckless danger to himself" and that "[h]e could have flipped the vehicle." (Transcript of proceedings, 5/16/14 at 18.) We agree that operating one's motor vehicle in such a manner as to intentionally lose control of the vehicle, causing it to lose traction and repeatedly spin in circles, constitutes reckless driving.

Based on the record of the suppression hearing, we conclude Trooper Cialella was able to articulate specific facts possessed by him, at the time of the questioned stop, which supported that he had probable cause to conclude that appellant was in violation of Section 3736. Accordingly, we find that the traffic stop of appellant's vehicle was legal.

## II.

Next, appellant contends once he was placed in handcuffs, he was under arrest and any questioning under those circumstances should have been preceded by *Miranda* warnings. Appellant argues that all evidence obtained after his arrest should have been suppressed.

> Statements made during custodial interrogation are presumptively involuntary, unless the accused is first advised of [his] *Miranda* rights. Custodial interrogation is questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of [his] freedom of action in any significant way. . . . Thus, [i]nterrogation occurs where the police should know that their words or actions are reasonably likely to elicit an incriminating response from the suspect. [I]n evaluating whether *Miranda* warnings were necessary, a court must consider the totality of the circumstances. . . .

*Commonwealth v. Williams*, 941 A.2d 14, 30 (Pa.Super. 2008) (*en banc*) (citations and quotation marks omitted).

Not every time an individual is placed in handcuffs is the functional equivalent of an arrest. *See Commonwealth v. Rosas*, 875 A.2d 341, 348 (Pa.Super. 2005) ("[P]olice officers may handcuff individuals during an

investigative detention."); **Commonwealth v. Guillespie**, 745 A.2d 654, 660-661 (Pa.Super. 2000). It is not the subjective view of the police officer that controls in determining whether an individual is in custody; rather, it is an objective test, *i.e.*, viewed in the light of the reasonable impression conveyed to the person subjected to the seizure rather than the strictly subjective view of the officers or the persons being seized. **Commonwealth v. Douglass**, 539 A.2d 412, 419 (Pa.Super. 1988). An arrest is an act that indicates an intention to take a person into custody or that subjects the person to the will and control of the person making the arrest. **Commonwealth v. Lovette**, 450 A.2d 975, 978 (Pa. 1982).

> In assessing whether a detention is too long in duration to be justified as an investigative stop, we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the [appellees]. A court making this assessment should take care to consider whether the police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second guessing.

**Commonwealth v. Mayo**, 496 A.2d 824, 826 (Pa.Super. 1985).

During an investigative detention, a suspect may legally be placed in handcuffs in order for the police to maintain control and safety for all involved. "It is well-established that 'when an officer detains a vehicle for a violation of a traffic law, it is inherently reasonable that he or she be concerned with safety and, as a result, may order the occupants out of the

vehicle to alight from the car.'" ***Commonwealth v. Rosa***, 734 A.2d 412, 414 (Pa.Super. 1999). Further, for their safety, police officers may handcuff individuals during an investigative detention. ***Guillespie***, 745 A.2d at 660-661 (act of handcuffing suspects during investigatory detention was merely part and parcel of ensuring the safe detaining of individuals during the lawful ***Terry***[4] stop and did not constitute an arrest).

Here, Trooper Cialella testified that he considered the encounter to be a "high risk" stop. After the troopers activated their overhead lights, appellant ignored the troopers and continued to drive to a dark and isolated location even though there were places to pull over on the side of Golden Lane. According to Trooper Cialella, the troopers grew increasingly more concerned for their safety as the appellant continued to fail to respond to their signal to stop and began to wave his hands out the window in some sort of undiscernible signal to the troopers. After the stop, the troopers found a large knife on appellant. He was then handcuffed.

We agree with the suppression court that placing appellant in handcuffs during the detention was lawful and did not constitute an arrest.

## III.

In his final issue, appellant contends that the suppression court erred in determining that Trooper Cialella had sufficient probable cause to place appellant in the police cruiser and transport him for chemical testing.

---

[4] ***Terry v. Ohio***, 392 U.S. 1 (1968).

Appellant claims that police cannot request chemical testing pursuant to 75 Pa.C.S.A. § 1547 for an alcohol-based DUI based solely on the smell of alcohol. ***Commonwealth v. Rosko***, 509 A.2d 1289 (Pa.Super. 1986). Appellant contends that the **only** basis for the transport for chemical testing was the faint smell on appellant's breath. He contends that there were no other indicia of impairment, such as slurred speech, staggering gait, or glassy bloodshot eyes, which gave the troopers probable cause to arrest him.

In order for an individual to be placed under arrest and transported for chemical testing, an officer must have probable cause to believe the driver has been driving under the influence of alcohol or a controlled substance. ***Commonwealth v. Angel***, 946 A.2d 115, 118 (Pa.Super. 2008) (***en banc***).

> Probable cause to arrest exists when the facts and circumstances within the police officer's knowledge and of which the officer has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.

***Commonwealth v. Dommel***, 885 A.2d 998, 1002 (Pa.Super. 2005), ***appeal denied***, 920 A.2d 831 (Pa. 2007). "Probable cause justifying a warrantless arrest is determined by the 'totality of the circumstances.'" ***Id.*** "[P]robable cause does not involve certainties, but rather 'the factual and practical considerations of everyday life on which reasonable and prudent [persons] act.'" ***Id.*** Further, "a police officer may utilize both his

experience and personal observations to render an opinion as to whether a person is intoxicated." ***Commonwealth v. Kelley***, 652 A.2d 378, 382 (Pa.Super. 1994), citing ***Commonwealth v. Bowser***, 624 A.2d 125 (Pa.Super. 1993).

Here, the trial court found, based on the totality of the circumstances, that Trooper Cialella had the quantum of evidence required to support the probable cause standard to arrest appellant for DUI. We agree with the trial court. Trooper Cialella testified that he observed appellant driving recklessly at 3:30 a.m., doing donuts in the church parking lot, that appellant did not immediately pull his vehicle over in response to the trooper's signals, and that he was waving his hands out the window as he was driving. Trooper Cialella smelled alcohol on appellant's breath. When Trooper Cialella asked appellant if he was drinking, appellant admitted that he had a few drinks. Based upon the foregoing, we find there was probable cause to arrest appellant for DUI under the totality of the circumstances.

Judgment of sentence affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/7/2016

- 13 -