**COMMONWEALTH of Pennsylvania,
Appellee,**

v.

**Derrick GUILLESPIE, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 8, 1999.
Filed Jan. 19, 2000.

Gail F. Guida, Harrisburg, for appellant.

Francis Chardo, Asst. Dist. Atty., Harrisburg, for Com., appellee.

Before FORD ELLIOTT and HESTER, JJ., and CIRILLO, President Judge Emeritus.

CIRILLO, President Judge Emeritus:

¶ 1 Derrick Guillespie appeals from his judgment of sentence entered in the Court of Common Pleas of Dauphin County. We reverse and remand.

¶ 2 Guillespie was arrested and convicted of possession with intent to deliver, possession of drug paraphernalia, and possession of marijuana. The charges stemmed from the following sequence of events: On November 8, 1997 at approximately 8:15 p.m., the Harrisburg Police Bureau received a report that a robbery had just occurred at 13th and Chestnut Streets. A police officer patrolling the vicinity spotted two men, the Appellant and his co-defendant, who fit the general description of the alleged robbers. Officers then attempted to stop the individuals. When the police moved in to effectuate the investigatory stop, the officers observed appellant's co-defendant discard something. Officer Luis Rodriguez then frisked appellant and felt from the outside of his pockets what appeared to be two pill bottles. When appellant was asked what was in his pockets, he stated that it was candy.

¶ 3 The facts that follow the preceding events are critical to our decision today. The testimony reveals that Officer Rodriguez did not immediately search Guillespie further once he initially felt the pill bottles. Rather, the officer's testimony is sketchy on the events that followed. From the record, we glean that at some point, either before or after his initial pat-down, Officer Rodriguez handcuffed Guillespie. At this time he did not have any concerns that Guillespie had a weapon on his person.

¶ 4 Subsequent to this initial pat-down, the robbery victim arrived at the scene where the police had detained Guillespie and his co-defendant; he indicated that neither of them were the perpetrators of the robbery. Another officer then checked for any outstanding arrest warrants on Guillespie's co-defendant. Thereafter, the police revealed that the items initially discarded by Guillespie's co-defendant were drugs. It was at this time that Officer Rodriguez conducted a second pat-down of Guillespie and removed the items from his pockets. At some point thereafter, officers determined that there were outstanding arrest warrants for Guillespie. He was then taken to the police station where the substances inside the pill bottles were inventoried, among other personal items on his person.

¶ 5 Prior to trial, Guillespie filed a motion to suppress the evidence found on his person during Officer Rodriguez' pat-down. The trial court denied this request and ultimately found him guilty and sentenced him to three to six years' incarceration.

¶ 6 On appeal, Guillespie sets forth the following claim for our review: Whether the search of Appellant beyond a pat-down for weapons was illegal.

¶ 7 Initially, we note our standard of review of the denial of a suppression motion. When reviewing an order denying a motion to suppress evidence, we must determine whether the factual findings of the trial court are supported by the evidence of record. *Commonwealth v. Jackson*, 451 Pa.Super. 129, 678 A.2d 798, 800 (1996). In making this determination, this court may only consider the evidence of the Commonwealth's witnesses, and so much of the witnesses for the defendant, as fairly read in the context of the record as a whole, which remains uncontradicted. *Id.* Additionally, it is exclusively within the province of the trial court to determine the credibility of the witnesses and the weight to be accorded their testimony. *Commonwealth v. Fitzpatrick*, 446 Pa.Super. 87, 666 A.2d 323, 325 (1995). If the evidence supports the findings of the trial court, we are bound by such findings and may reverse only if the legal conclusions drawn therefrom are erroneous. *Id.*

¶ 8 Presently, Guillespie does not contest that he was the proper subject of a stop and subsequent *Terry* [1] frisk. Rather, he argues that the scope of the patdown exceeded the lawful bounds, and, as such, the officers lacked probable cause to seize the evidence and arrest him. We agree.

¶ 9 Under Pennsylvania case law, a police officer may conduct "a limited search of an individual's outer clothing in an attempt to discover the presence of weapons which may be used to endanger the safety of police or others." *Commonwealth v. Hicks*, 434 Pa. 153, 158, 253 A.2d 276, 279 (1969) (citing *Terry v. Ohio*, 392 U.S. 1, 20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). *See Commonwealth v. Canning*, 402 Pa.Super. 438, 587 A.2d 330, 331 (1991) (agreeing with *Terry* that because the sole justification for the search is the protection of the officer, it must be confined in scope to a search for weapons). Such procedure is known as a *Terry* stop and frisk or patdown.

¶ 10 In *Commonwealth v. Fink*, 700 A.2d 447 (Pa.Super.1997), our court examined the interplay between a doctrine known as "plain feel" and a typical *Terry* frisk, stating:

> [T]his court now recognizes the seizure of non-threatening contraband detected by an officer's "plain feel" during a patdown for weapons if the officer is lawfully in a position to detect the presence of contraband, the incriminating nature of the contraband is immediately apparent and the officer has a lawful right of access to the object. *Interest of B.C.*, [453 Pa.Super. 294,] 305, 683 A.2d [919,] 925 [1996] (citing *Minnesota v. Dickerson*, 508 U.S. 366, 375, 113 S.Ct. 2130, 2136–37, 124 L.Ed.2d 334 (1993)).

*Fink*, 700 A.2d at 450 (citation omitted). The court then noted that for purposes of a plain feel search, the term " 'immediately apparent' means that the officer conducting the *Terry* frisk readily perceives, without further search, that what he is feeling is contraband." *Id.* Thus, the "plain feel" doctrine only applies under the limited circumstances where the facts meet the plain view doctrine requirements that the criminal nature of the contraband is immediately apparent, and the officer has a lawful right of access to the object. *See Dickerson*, 508 U.S. at 375–76, 113 S.Ct. 2130; *Fink*, 700 A.2d at 450.

¶ 11 In *Commonwealth v. Graham*, 554 Pa. 472, 721 A.2d 1075 (1998), our supreme court agreed with this court's adoption of the plain feel doctrine originally expressed in *Minnesota v. Dickerson*, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). In *Dickerson, supra*, the United States Supreme Court reaffirmed the adoption of the "plain feel" doctrine. In doing so, however, the Court was careful to emphasize that while an officer may seize nonthreatening contraband detected during a protective pat-down search, "the officers' search [must] stay[ ] within the bounds marked by *Terry*." *Dickerson* at 373, 113 S.Ct. 2130. Moreover, the Court stated that "[r]egardless of whether the officer detects contraband by sight or by touch, ... the Fourth Amendment' requirement that the officer have probable cause to believe that the item is contraband before seizing it ensures against excessively speculative seizures." *Id.* at 376, 113 S.Ct. 2130 (emphasis added).

¶ 12 Since the sole justification for a *Terry* search is the protection of the police and others nearby, such a protective search must be strictly "limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby." *Terry*, 392 U.S. at 26, 88 S.Ct. 1868. Thus, the purpose of this limited search is not to discover evidence, but to allow the officer to pursue his investigation without fear of violence. *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). If the protective search goes beyond what is nec-

---

1. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20     L.Ed.2d 889 (1968).

essary to determine if the suspect is armed, it is no longer valid under *Terry* and its fruits will be suppressed. *Sibron v. New York*, 392 U.S. 40, 65, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968).

¶ 13 In *Graham, supra,* the Pennsylvania Supreme Court was careful to note that this exception to the warrant requirement should be construed in an extremely narrow fashion, finding that even a "squeeze" of the defendant's pocket went beyond the scope of the search authorized by *Terry*. The court also articulated that Pennsylvania jurisprudence follows the principle that a *Terry* frisk must relate, in nature and scope, to the sole justification for the search: a pat-down for weapons to ensure the safety of the police and those nearby.

¶ 14 The *Graham* court stated that "[t]herefore, a *Terry* frisk will only support the seizure of contraband discovered *via* the officer's plain feel when the incriminating nature of that contraband is immediately apparent to the officer, based solely on the officer's initial pat-down of the suspect's outer garments. Once the initial pat-down dispels the officer's suspicion that the suspect is armed, any further poking, prodding, squeezing, or other manipulation of any objects discovered during that pat-down is outside the scope of the search authorized under *Terry*." *Id.* at 485, 721 A.2d at 1081. As noted in *Graham,* the superior court stated in *Fink, supra,* that the plain feel doctrine is only applicable if the incriminating nature of the contraband is immediately apparent. *Graham,* 721 A.2d at 1081; *Fink,* 700 A.2d at 450 (*citing Dickerson,* 508 U.S. at 375, 113 S.Ct. 2130).

¶ 15 In the present case, the facts reveal that Officer Rodriguez felt, during his pat-down of Guillespie, what appeared to be pill bottles in his pockets. When questioned as to what was actually in his pockets, Guillespie stated that it was candy. Rodriguez, however, did not immediately search Guillespie's pockets to remove the bottles. Rather, he waited until another officer arrested Guillespie's co-defendant, before he emptied Guillespie's pockets and uncovered uncontrolled substances and drug paraphernalia. Subsequently, the officers also discovered that there were outstanding warrants for Guillespie's arrest; the officers then charged and arrested Guillespie.

¶ 16 In *Commonwealth v. Stackfield,* 438 Pa.Super. 88, 651 A.2d 558 (1994), the primary case relied upon by Guillespie, an officer conducted a lawful pat-down search of appellant. During the protective search, the officer patted down appellant's pockets, testifying that he "felt some— what he knew was packaging material or zip-lock baggies." *Id.* at 560. Subsequently the officer reached in and pulled out numerous zip-lock baggies that had been in his pants pockets; the officer suspected the baggies contained cocaine residue and marijuana. *Id.*

¶ 17 On appeal, our court held that the officer was not permitted to search through the appellant's pockets due to the fact that "the officer found, or felt, nothing resembling a weapon in the course of the protective pat-down." Accordingly, our court reversed the trial court's decision to deny appellant's motion to suppress drugs found in appellant's pockets during the pat-down, vacated the judgment of sentence and remanded for a new trial. In reaching this decision, our court stated:

> We find the record does not support the factual conclusion that the officer felt an item that he immediately recognized as contraband, as the Commonwealth and the trial court maintain. A zip-lock baggie is not per se contraband, although material contained in a zip-lock baggie may well be. A close reading of the record in appellant's case does not support a factual finding that the officer conducting the Terry pat-down recognized a "contour or mass [that] made its identity immediately apparent[.]" *Dickerson,* 508 U.S. at 375–76, 113 S.Ct. at 2137; *Johnson,* 429 Pa.Super. at 166, 631 A.2d at 1339.... **Sight unseen,**

the contents of the baggies that the officer felt in appellant's pants pockets could as easily have contained the remains of appellant's lunch as [well as] contraband. The record discloses that only after the officer reached in and seized the baggies from appellant's pockets that the contents in two of the baggies were identified, by sight, as a green, leafy material that subsequently field-tested positive for marijuana.

*Stackfield*, 651 A.2d at 562 (emphasis added). "More specifically, the facts available to the officer conducting the search of appellant's pockets must have been such that he could reasonably believe that the items he felt may have been contra[ ]band." *Id.*

¶ 18 At the time Officer Rodriguez conducted the "pat-down" of Guillespie, it was not immediately apparent that the objects in Guillespie's pockets were incriminatingly indicative of the presence of contraband. First, any innocuous small object(s) could have been contained within the pill bottles. Second, if the officer had thought that the objects in the pockets were "immediately apparent" as contraband, he should not have stopped his search and later decided to resume a more detailed search of Guillespie's pockets once he received evidence of drugs having been discarded by his co-defendant. Under such circumstances, the second search clearly went beyond that justified for a *Terry* stop—the search was no longer needed to protect Officer Rodriguez from a suspiciously armed suspect.[2]

¶ 19 In sum, we agree with Guillespie's contentions that equate a pill bottle to a baggie when felt during a lawful *Terry* frisk. The incriminating nature of the former object is no more evident and logically apparent to an officer than that of the latter.[3] In either case, the officer is not feeling a contour or mass of contraband, rather he or she is merely sensing the shape of a container. Furthermore, if any type of container were to allow an officer to in fact feel the contour of illegal drugs it would be that of a flexible plastic bag, not that of a hard bottle.

¶ 20 In addition to our finding that the pill bottles were not "immediately apparent" contraband justifying a further warrantless search of Guillespie's pockets, we also are compelled to conclude that Officer Rodriguez no longer had a lawful right of access to the objects in Guillespie's pockets at the time of his intrusive search.

¶ 21 At trial, a Harrisburg police officer who was the first individual to see the suspects in the vicinity of the robbery site, testified that the procedure for their office was to stop and detain an individual, with reasonable suspicion, ask for identification and immediately run a warrant check. If, in fact, the search were to reveal an outstanding arrest warrant for the individual, officers would then handcuff him or her (take the individual into custody), transport him or her to the police station, and process him or her. The officers are also instructed to conduct a search incident to arrest on the field to remove any items on the individual's person prior to transport.

---

2. Additionally, we note that the location and consistency of an object have been determinative factors upholding the "plain feel" search of a defendant during a lawful pat-down. *See Commonwealth v. Johnson*, 429 Pa.Super. 158, 631 A.2d 1335 (1993) (where drugs were found in defendant's crotch area after lawful pat down and where consistency of package gave rise to probable cause, subsequent search and seizure of contraband upheld under plain feel exception to the warrant requirement). In the present case, the bottles were not in a suspicious location on Guillespie's person, nor did they reveal an incriminating consistency through the officer's tactile sense.

3. In fact, at trial Officer Rodriguez testified that "crack cocaine can either most [sic] commonly out in the streets probably be put in a little zip lock bag. If not in a zip lock bag, then be put into an empty container of Tic Tac Mints that you get in the store or a ChapStick tube can be hollowed and it can be put in that. Probably one of the more common things out in the street is a 35 millimeter film canister or like a pill bottle."

¶ 22 There is no question that Guillespie was handcuffed prior to the robbery victim arriving on the scene and prior to the check of any outstanding warrants. Moreover, Officer Rodriguez admitted at trial that Guillespie totally complied with the officer's request to walk toward him and allow him to detain him for a frisk.

¶ 23 "While a suspect may certainly walk away from a mere encounter with a police officer, every traffic stop and every *Terry* stop involves a stop and period of time during which the suspect is not free to go but is subject to the control of the police officer detaining him." (citations omitted). *Commonwealth v. Ellis*, 379 Pa.Super. 337, 549 A.2d 1323, 1331 (1988). Our supreme court has declined to hold that every time an individual is placed in handcuffs that such individual has been arrested. *See Commonwealth v. Carter*, 537 Pa. 233, 247 n. 2, 643 A.2d 61, 67 n. 2 (1994). However, where a defendant has been placed in handcuffs, physically held by officers with guns drawn and had to accompany the police to City Hall for questioning, the supreme court has found such acts rose to the level of custodial detention. *Carter, supra*; *see Commonwealth v. Holmes*, 482 Pa. 97, 393 A.2d 397 (1978). It is not the subjective view of the police officer that controls in determining whether an individual is in custody; rather, it is an objective test, i.e., viewed in the light of the reasonable impression conveyed to the person subjected to the seizure rather than the strictly subjective view of the officers or the persons being seized. *Commonwealth v. Douglass*, 372 Pa.Super. 227, 539 A.2d 412, 419 (1988).

¶ 24 An arrest is an act that indicates an intention to take a person into custody or that subjects the person to the will and control of the person making the arrest. *Commonwealth v. Lovette*, 498 Pa. 665, 671, 450 A.2d 975, 978 (1982).

In assessing whether a detention is too long in duration to be justified as an investigative stop, we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the [appellees]. A court making this assessment should take care to consider whether the police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second guessing.

*Commonwealth v. Mayo*, 344 Pa.Super. 336, 496 A.2d 824, 826 (1985).

¶ 25 In the present case, Guillespie's motion to suppress delineates that after he was approached by the police, he and his co-defendant were told to step away from a building and they were placed in handcuffs. At this moment the defendant and co-defendant asked why they were being handcuffed; the officers replied that a robbery had just occurred and that they matched the suspects' descriptions. *Cf. Commonwealth v. Martinez*, 437 Pa.Super. 93, 649 A.2d 143 (1994) (where officers handcuffed appellant for their safety while they searched house pursuant to search warrant, fact that they never told appellant why they were handcuffing him made it reasonable for appellant to believe that he was under the control and within the custody of the officer and, consequently, that he was under arrest; because police did not have probable cause to arrest, arrest was illegal). They were then told that they would have to wait until the robbery victim could come to the scene for identification purposes. The record does not reveal that any of the officers placed either of the men in a police car or that the officers attempted to transport them anywhere. In fact, the robbery victim arrived shortly thereafter and the circumstances do not reveal that the officers were unnecessarily intrusive towards the suspects.

¶ 26 While the act of handcuffing may appear to be custodial in nature in many cases, the facts in the present case do not lend such an interpretation. Rather, the handcuffing of Guillespie and his

co-defendant was merely part and parcel of ensuring the safe detaining of the individuals during the lawful *Terry* stop. The police diligently pursued bringing the robbery victim to the scene for identification purposes. While the use of restraints is a factor to be considered with regard to whether a detention is custodial, in the present case other factors militate against such a finding—e.g., minimal duration of detention, no transport against will, no show or threat or use of force. *See Douglass, supra; see also Ellis, supra.* After examining the totality of the circumstances, we cannot find that the officer's detention of Guillespie and the fact that he was placed in handcuffs immediately rose to the level of an unwarranted custodial detention. Our analysis, however, does not stop here.

¶ 27 At trial Officer Rodriguez, the only officer that stopped and dealt with Guillespie during the course of the preceding events, testified that only **after** the robbery victim had arrived, had failed to identify them as the perpetrators and had left the identification scene, did the remaining officers indicate that they had found some drugs that had been discarded by Guillespie's co-defendant. This testimony is consistent with that of the defendant, and thus, we consider it as of record. Moreover, the testimony reveals that it was at this point that the officer searched Guillespie for a second time to remove the pill bottles from his pockets.

■ ¶ 28 We must keep in mind that an "investigative detention" or *Terry* stop must be supported by reasonable suspicion; it subjects the suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of arrest. *See Berkemer v. McCarty*, 468 U.S. 420, 104

S.Ct. 3138, 82 L.Ed.2d 317 (1984); *Terry, supra.*

¶ 29 Between the time when Officer Rodriguez searched Guillespie a *second time* and when the other officers actually found out that there were outstanding arrest warrants for Guillespie, Officer Rodriguez no longer had reasonable suspicion to detain him. We find this fact critical to our determination that the evidence should have been suppressed as it was an unlawful extension of a warrantless search and seizure and as it does not fit within the inevitable discovery doctrine.

¶ 30 In *In the Interest of D.M.*, 556 Pa. 160, 169, 727 A.2d 556, 560 (1999), our supreme court recently stated that

> appellant and his companions were detained for a mere two to four minutes until the victim was able to eliminate them as the robbery suspects. *See Commonwealth v. Ellis*, 541 Pa. 285, 296, 662 A.2d 1043, 1049 (1995) (police may briefly detain a suspect in order to allow an on-scene identification). **Appellant would have been free to leave following the victim's identification had he not possessed an illegal firearm.**

*Id.* (emphasis added).

■ ¶ 31 Instantly, because Officer Rodriguez no longer had reasonable suspicion at the point that the robbery victim came to the scene and eliminated Guillespie as a robbery suspect, any further detention of him was improper.[4] He was free to leave at this point and the officer's handcuffing and subsequent (second) patdown and seizure of the pill bottles was illegal. Accordingly, we reverse Guillespie's judgment of sentence.

---

**4.** We note that were there record evidence that no time elapsed from the point at which the robbery victim arrived to identify the suspects and when the officers found the drugs

discarded by Guillespie's co-defendant, Officer Rodriguez would have had reasonable suspicion to further detain and search Guil-

¶ 32 Judgment of sentence reversed. Case remanded for a new trial. Jurisdiction relinquished.[5]

lespie. However, the facts lead to a contrary result.

5. Moreover, we do not find that there was an independent basis to warrant the search of appellant's pockets and ultimate seizure of contraband therein based upon the receipt of information that there were outstanding warrants for Guillespie's arrest. At this point the officers no longer had reasonable suspicion to detain Guillespie. Officer Rodriguez freely admitted that before he checked to see if there were any outstanding warrants for Guillespie's arrest, the victim had equivocally stated that Guillespie and his co-defendant were not the perpetrators of the robbery. Therefore, since the officers had no right to have detained him to run such a check, the fact of his outstanding warrants would not have come to light and there would have been no independent basis for his arrest and inevitable discovery of the contraband in his search incident to such arrest had the officers acted properly.

"The inevitable discovery rule, sometimes referred to as the 'independent source rule,' provides that if the prosecution can demonstrate that the evidence in question was procured from an independent origin, such evidence is admissible." *Commonwealth v. Melendez*, 544 Pa. 323, 332, 676 A.2d 226, 230 (1996). The burden is on the Commonwealth to prove that the secondary evidence (in this case the contraband) was gathered by means sufficiently distinguishable from any illegality so as to be "purged of its primary taint" rather than deriving from exploitation of the illegality. *Commonwealth v. Brooks*, 468 Pa. 547, 558–59, 364 A.2d 652, 657 (1976). We do not find that the present facts justify application of the limited "independent source" rule. There are no circumstances truly independent from the illegal search that would justify admission of the contraband.