J-A29030-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| RONDON REYES, | |
| Appellee | No. 2441 EDA 2016 |

Appeal from the Order June 28, 2016
in the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-001300-2015

BEFORE:  LAZARUS, J., PLATT, J.,[*] and STRASSBURGER, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED FEBRUARY 05, 2018**

The Commonwealth appeals as of right from the order granting the defense motion to suppress the handgun confiscated from Appellee, Rondon Reyes, after police on surveillance in a high crime area observed him retrieving it from a car and carrying it inside his waistband on a street in Philadelphia.[1] The court granted suppression, concluding that the police only had reasonable suspicion to stop and frisk.  Under controlling authority, we conclude that the police had probable cause to arrest.  Accordingly, we vacate and remand.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** Pa.R.A.P. 311(d).

We derive the facts of this case from the suppression court's opinion and our independent review of the certified record. (**See** Suppression Court Opinion, 2/28/17). Defense counsel candidly conceded that there was no dispute about the facts. (**See** N.T. Hearing, 6/21/16, at 30).

On December 7, 2015 around 1:23 p.m., Philadelphia Police Officer Michael Golembieski and his partner Officer Graziano were conducting surveillance from the third floor of an old school building near the 2000 block of Rush Street in Philadelphia.[2] Officer Golembieski testified that the neighborhood was "a high-crime, high shooting area. A lot of narcotics, a lot of shootings." (**Id.** at 11).

The police observed Appellee standing around with three companions about fifty to seventy-five feet away on the same side of the street below, near a Pontiac Grand Prix. Officer Golembieski saw Appellee reach into the Grand Prix and retrieve a black handgun, place it into the left side of his waistband, and cover it up with his shirt.

The two officers ran down to the street, and approached Appellee and his companions with their guns drawn. While Officer Graziano had the other three stand against a wall for a weapons pat down, Officer Golembieski ordered Appellee to lie face down on the ground, handcuffed him, and

_____

[2] Officer Graziano's first name is not readily apparent in the record before us.

retrieved the handgun, a Glock 23 .40 caliber semi-automatic pistol.[3]  (*See id.* at 14).

Officer Golembieski testified that while Appellee was handcuffed, he said, "he should have blasted us, and he didn't even get to use the gun yet." (*Id.* at 15).  The police determined that Appellee was not licensed to carry a firearm.  They also confirmed that the handgun was stolen.  (*See id.* at 18).

Appellee was arrested and charged with violation of 18 Pa.C.S.A. § 6105 (persons not to possess, use, manufacture, control, sell or transfer firearms); 18 Pa.C.S.A. § 6106 (firearms not to be carried without a license); and 18 Pa.C.S.A. § 6108 (carrying firearms on public streets or public property in Philadelphia).  Appellee filed the instant motion to suppress which, after hearings, the suppression court granted.  This timely appeal followed.[4]

The Commonwealth raises one question on appeal:

> Did the [suppression] court err in suppressing the gun recovered from [Appellee] minutes after a police officer saw him holding it on the street?

(Commonwealth's Brief, at 4).

---

[3] Officer Graziano apparently found no weapons on the other three men.  In any event, they are not involved in this appeal.

[4] The Commonwealth voluntarily filed a statement of errors on July 25, 2016.  The suppression court filed an opinion on February 28, 2017.  *See* Pa.R.A.P. 1925.

The Commonwealth argues that seeing Appellee retrieve, conceal and carry a firearm on the street in Philadelphia gave the police probable cause to arrest him for a violation of section 6108.[5] (**See** Commonwealth's Brief, at 10, 12, 14). Under controlling authority, we agree.

Our standard and scope of review are well-settled.

> It is unquestionably the province of the suppression court to make findings of fact and conclusions of law as to whether evidence was obtained in violation of an accused's constitutional rights. The standard of review which governs a ruling on a motion to suppress is well-settled. An appellate court must first ascertain whether the record supports the factual findings of the suppression court, and then determine the reasonableness of the inferences and legal conclusions drawn therefrom. In reviewing an appeal taken by the Commonwealth from a suppression order,
>
> > we must consider only the evidence of the defendant's witnesses and so much of the Commonwealth evidence that, read in the context of the record as a whole, remains uncontradicted. Furthermore, our scope of appellate review is limited primarily to questions of law. We are bound by the suppression court's findings of fact if those findings are supported by the record. Factual findings wholly lacking in evidence, however, may be rejected.

---

[5] Section 6108, carrying firearms on public streets or public property in Philadelphia, provides that:

> No person shall carry a firearm, rifle or shotgun at any time upon the public streets or upon any public property in a city of the first class unless:
>
> (1) such person is licensed to carry a firearm; or
>
> (2) such person is exempt from licensing under section 6106(b) of this title (relating to firearms not to be carried without a license).

18 Pa.C.S.A. § 6108.

The bench mark of propriety for a warrantless arrest is the existence of probable cause. Probable cause to effectuate an arrest exists when the facts and circumstances within the knowledge of the arresting officer are reasonably trustworthy and sufficient to justify a person of reasonable caution in believing that the arrestee has committed an offense. In addressing the existence of probable cause, courts must focus on the circumstances as seen through the eyes of the trained police officer, taking into consideration that probable cause does not involve certainties, but rather "the factual and practical considerations of everyday life on which reasonable and prudent men act."

The court must base its probable cause determination on a common-sense non-technical analysis, and must employ the viewpoint of the police officer, not that of the average citizen. **Probable cause for a warrantless arrest requires only the *probability,* and not a *prima facie* showing, of criminal activity.** Moreover, **probable cause for a warrantless arrest exists when criminality is *one* reasonable inference; it need not be the only, or even the most likely, inference.**

***Commonwealth v. Romero***, 673 A.2d 374, 376–77 (Pa. Super. 1996)

(citations omitted; emphases added).

The United States Supreme Court has recently explained:

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Because arrests are "seizures" of "persons," they must be reasonable under the circumstances. ***See Payton v. New York****, 445 U.S. 573, 585, 100 S. Ct. 1371, 63 L.Ed.2d 639 (1980). A warrantless arrest is reasonable if the officer has probable cause to believe that the suspect committed a crime in the officer's presence. ***Atwater v. Lago Vista****, 532 U.S. 318, 354, 121 S. Ct. 1536, 149 L.Ed.2d 549 (2001).

To determine whether an officer had probable cause for an arrest, "we examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable

cause." ***Maryland v. Pringle***, 540 U.S. 366, 371, 124 S. Ct. 795, 157 L.Ed.2d 769 (2003) (quoting ***Ornelas v. United States***, 517 U.S. 690, 696, 116 S. Ct. 1657, 134 L.Ed.2d 911 (1996)). Because probable cause "deals with probabilities and depends on the totality of the circumstances," 540 U.S., at 371, it is "a fluid concept" that is "not readily, or even usefully, reduced to a neat set of legal rules," ***Illinois v. Gates***, 462 U.S. 213, 232, 103 S. Ct. 2317, 76 L.Ed.2d 527 (1983). It "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." ***Id.,*** at 243–244, n. 13 (1983). Probable cause "is not a high bar." ***Kaley v. United States***, 571 U.S. ––––, –––– [(2014) (slip op., at 18)].

***D.C. v. Wesby***, No. 15-1485, 2018 WL 491521, at *6 (U.S. filed Jan. 22, 2018).

The Fourth Amendment of the Federal Constitution provides, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . ." U.S. Const. amend. IV. Likewise, Article I, Section 8 of the Pennsylvania Constitution states, "[t]he people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures . . ." Pa. Const. Art. I, § 8. Under Pennsylvania law, there are three levels of encounter that aid courts in conducting search and seizure analyses.

The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or respond. The second, an "investigative detention" must be supported by reasonable suspicion; it subjects a suspect to a stop and period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

***Commonwealth v. Mason***, 130 A.3d 148, 152 (Pa. Super. 2015), *appeal denied*, 138 A.3d 3 (Pa. 2016) (case citation omitted). Finally, our standard of review on questions of law involving suppression is *de novo*. ***See***

*Commonwealth v. Smith*, ___ A.3d ____, 2017 WL 6615821, 877 WDA 2017 (Pa. Super. filed Dec. 28, 2017).

Here, the Commonwealth argues that in the totality of circumstances the police had probable cause to arrest Appellee based on their observation of his retrieving and concealing on his person a firearm on the streets of Philadelphia, in apparent (and, it turns out, actual) violation of section 6108. (*See* Commonwealth's Brief, at 9-16); *see also* 18 Pa.C.S.A. § 6108.[6] Citing *Romero*, *supra* at 377, the Commonwealth maintains that this police observation of Appellee in visible possession of a firearm was a sufficient basis for the trained police officer reasonably to infer that Appellee was acting in violation of the statutory prohibition against carrying a firearm on public streets or on public property in Philadelphia under section 6108. (*See* Commonwealth's Brief, at 15).[7]

The suppression court posits that caselaw decided after *Romero* does not support the Commonwealth's argument. (*See* Suppression Ct. Op., at 7).

---

[6] Appellee does not claim either of the statutory exceptions. He does not dispute that he was not licensed. In fact, it appears that he was ineligible for a license based on a prior conviction. Nor does he claim any of the exemptions enumerated at section 6106(b). *See* 18 Pa.C.S.A. § 6108.

[7] We observe that, because Appellee chose not to present any independent evidence (other than through cross-examination, and the offer of character witnesses), there is no evidence of Appellee/defendant's witnesses to be considered, and the Commonwealth's evidence, read in the context of the record as a whole, remains uncontradicted.

However, the only two cases cited by the court in support of this proposition both originated in Allegheny County, where section 6108 does not apply.[8] Both cases involved review under a reasonable suspicion standard. It bears noting that both cases upheld the denial of suppression.

The suppression court refers repeatedly to the undisputed fact that the police handcuffed Appellee at the beginning of the encounter, and only began questioning him after he was handcuffed. (**See** Suppression Ct. Op., at 2, 3 [six references], 6 [two references], and 7 [two references to handcuffs and one to physical restraints]).

Officer Golembieski testified that he handcuffed Appellee first, for safety:

> I didn't want us to get shot. I didn't want [Appellee] to get shot. I didn't want anybody walking by to get shot. The best thing was to get [him] on the ground so he's in a vulnerable position where we can handcuff him for our safety until we find out what's going on.

(N.T. Hearing, 6/21/16, at 27-28).

"Our [S]upreme [C]ourt has declined to hold that every time an individual is placed in handcuffs that such individual has been arrested." **Commonwealth v. Guillespie**, 745 A.2d 654, 660 (Pa. Super. 2000) (citation omitted). "For their safety, police officers may handcuff individuals

---

[8] **See Mason**, **supra**; **Commonwealth v. Stevenson**, 894 A.2d 759, 773 (Pa. Super. 2006), *appeal denied*, 917 A.2d 846 (Pa. 2007).

during an investigative detention." ***Commonwealth v. Rosas***, 875 A.2d 341, 348 (Pa. Super. 2005), *appeal denied*, 897 A.2d 455 (Pa. 2006). ***Accord,*** ***Commonwealth v. Carter***, 643 A.2d 61, 67 n.2 (Pa. 1994), *cert. denied*, 514 U.S. 1005 (1995). Here, placing Appellee in handcuffs, by itself, is neither determinative that Appellee was "prematurely arrested," as suggested by the suppression court, (***see*** N.T. Hearing, 6/28/16, at 33), nor is it a substantial factor in the probable cause analysis under our standard of review.

On independent review, we are constrained to conclude that the reasoning of the suppression court is unpersuasive, and its legal conclusions are in error.

We conclude that the police had probable cause to arrest when they observed Appellee retrieve, carry, and conceal the handgun.[9] They began with an investigative detention. To maintain the *status quo* and reduce the risk of gunfire to the participants, and any possible passersby, they put Appellee in a prone positon and removed his firearm before making any verbal inquiry. When further investigation confirmed that Appellee was not licensed to carry, was ineligible for licensure, and was carrying a firearm, the police arrested him.

---

[9] Because we conclude that the police had probable cause, we need not review the Commonwealth's alternate theory that the evidence would have been admissible under the reasonable suspicion standard, and we decline to do so.

Nothing in our jurisprudence required the police here, outnumbered two to one, to place their safety in the hands of an armed suspect and his companions. "Our constitutional safeguards do not require an officer to gamble with his life." ***Commonwealth v. Morris***, 644 A.2d 721, 724 (Pa. 1994), *cert. denied*, 513 U.S. 1031 (1994).

Order vacated. Case remanded for further proceedings consistent with this decision. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/5/18