J-S19005-19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

COMMONWEALTH OF PENNSYLVANIA,   :     IN THE SUPERIOR COURT OF
                                 :             PENNSYLVANIA
                  v.                :
                                   :
SAMUEL ANDINO,             :
                                   :
          Appellant       :     No. 1541 EDA 2018

Appeal from the Judgment of Sentence May 8, 2018
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0003625-2017

BEFORE:    LAZARUS, J., KUNSELMAN, J. and STRASSBURGER, J.*

DISSENTING MEMORANDUM BY STRASSBURGER, J.: **FILED MAY 17, 2019**

Because police had reasonable suspicion to conduct a pat down search,

I respectfully dissent and offer the following analysis.

In this case, there is no dispute that Appellant's vehicle was subject to

a lawful traffic stop.[1]

> As provided for by statute, anytime a police officer has "reasonable suspicion" to believe a violation of the Motor Vehicle Code is occurring or has occurred, the officer may initiate an investigatory vehicle stop. Incident to this stop, an officer may check the vehicle's registration, the driver's license and obtain any information necessary to enforce provisions of the motor vehicle code. Additionally, police may request both drivers and their passengers to alight from a lawfully stopped car as a matter of right.

---

[1] "[Appellant] is not challenging the stop; here, police observed [Appellant] commit a Motor Vehicle Code violation, and a check revealed that the registration of the car had expired, so police had the proper legal authority to pull the car over." Appellant's Brief at 7.

*Retired Senior Judge assigned to the Superior Court.

[A]llowing police officers to control all movement in a traffic encounter … is a reasonable and justifiable step towards protecting their safety.

'If, during the course of a valid investigatory stop, an officer observes unusual and suspicious conduct on the part of the individual which leads him to reasonably believe that the suspect may be armed and dangerous, the officer may conduct a pat-down of the suspect's outer garments for weapons.' *Commonwealth v. E.M./Hall*, [] 735 A.2d 654, 659 ([Pa.] 1999). In order to establish reasonable suspicion, the police officer must articulate specific facts from which he could reasonably infer that the individual was armed and dangerous. When assessing the validity of a *Terry* stop, we examine the totality of the circumstances, [] giving due consideration to the reasonable inferences that the officer can draw from the facts in light of his experience, while disregarding any unparticularized suspicion or hunch.

*Commonwealth v. Wilson*, 927 A.2d 279, 284 (Pa.Super.2007).

While the law of search and seizure is constantly evolving, its focus remains on the delicate balance of protecting the right of citizens to be free from unreasonable searches and seizures and protecting the safety of citizens and police officers by allowing police to make limited intrusions on citizens while investigating crime. The court must be guided by common sense concerns, giving preference to the safety of the officer during an encounter with a suspect where circumstances indicate that the suspect may have, or may be reaching for, a weapon.

*Commonwealth v. Mack*, 953 A.2d 587, 589-90 (Pa. Super. 2008) (some citations and quotation marks omitted).

Instantly, the testimony of Officer Davis, which was credited by the trial court, established the following.  Officer Davis observed Appellant's vehicle double-parked in a "[h]igh crime, high drug neighborhood." N.T.,

12/14/2017, at 6. When police pulled up behind Appellant, Appellant "took off from that location." *Id*. at 7. Appellant then failed to use a turn signal, police activated overhead lights and sirens, and Appellant pulled over. Police learned that the registration for Appellant's car had expired.

Officer Davis testified that upon walking up to the driver's side window, he detected "[t]he odor of burnt marijuana coming from the vehicle."[2] *Id*. at 10. Officer Davis testified that based upon his experience, "whenever there's drugs, there's guns." *Id*. at 19. In the 16 years he has been a patrol officer, he has recovered a firearm one third of the time in a narcotics arrest, particularly in the area of the stop. *Id*. at 20. Moreover, Officer Davis testified that his concern is heightened when it is nighttime. *Id*. at 17. In an effort to search for the marijuana, Officer Davis reached into the vehicle. At that point, Appellant "leaned over towards the steering

---

[2] The trial court specifically credited this testimony. Trial Court Opinion, 8/21/2018, at 4. This Court is "bound by the suppression court's factual findings so long as they are supported by the record." ***Commonwealth v. Yandamuri***, 159 A.3d 503, 516 (Pa. 2017). Here, the Majority concludes that the trial court's credibility determination should "not be considered" because it was contradicted by the other officer involved in the stop. Majority, at 7; ***see*** N.T., 12/14/2017, at 36 (Officer Murphy testifying that he does not "recall any odor of marijuana coming from the vehicle that night"). Officer Murphy's testimony does not contradict Officer Davis's testimony. It was Officer Murphy's position throughout his testimony that he did not remember the traffic stop at all. ***See*** N.T., 12/14/2017, at 34 (Officer Murphy testifying that he did not remember the traffic stop of Appellant at all without reviewing the paperwork). Thus, this Court is bound by the trial court's credibility determination that it believed Officer Davis's testimony regarding the smell of burnt marijuana.

- 3 -

wheel." [3] *Id*. at 21. Upon patting Appellant's pocket, Officer Davis discovered a magazine with 15 live rounds. *Id*. at 11-12. At that point, Officer Davis asked Appellant to step out from the car so he could conduct a protective search.

Here, the totality of the circumstances demonstrates that the trial court did not commit an error of law in concluding that Officer Davis had reasonable suspicion to conduct a pat-down search of Appellant. Appellant's vehicle was lawfully stopped, and he was driving the vehicle with an expired registration sticker in a high-crime area. Because of the lawful traffic stop, even without the smell of burnt marijuana emanating from the vehicle, Officer Davis had the authority to search Appellant and/or order Appellant out of his vehicle for police officer safety. As this Court has pointed out,

> the sole justification for a *Terry* search is the protection of the police and others nearby, [therefore,] such a protective search must be strictly limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby. Thus, the purpose of this limited search is not to discover evidence, but to allow the officer to pursue his investigation without fear of violence. *Adams v. Williams*, 407 U.S. 143 [] (1972). If the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under *Terry* and its fruits will be suppressed.

_____

[3] The trial court characterized this movement as a "furtive" movement that "in the officer's opinion was out of the ordinary." Trial Court Opinion, 8/21/2018, at 4. The Majority concludes that this movement, which occurred after Officer Davis commenced the pat-down search, could not be utilized the justify the search itself. I agree with this conclusion.

***Commonwealth v. Guillespie***, 745 A.2d 654, 657-58 (Pa. Super. 2000) (some internal citations and quotation marks omitted).

Here, Officer Davis conducted a very limited pat-down search of Appellant where he immediately discovered live ammunition, which would lead any reasonable person to believe that Appellant was indeed armed and dangerous. I would conclude that this type of search is well within the confines of ***Terry***, and therefore I would affirm Appellant's judgment of sentence.