J-S31044-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WADI S. CLENTSCALE | : | |
| | : | |
| Appellant | : | No. 790 EDA 2023 |

Appeal from the Judgment of Sentence Entered October 14, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0007727-2021

BEFORE:  BOWES, J., McLAUGHLIN, J., and BECK, J.

MEMORANDUM BY BOWES, J.:                **FILED DECEMBER 16, 2024**

Wadi S. Clentscale appeals from the judgment of sentence of six to twelve months of incarceration  after the trial court found him guilty of various firearms offenses.   These charges accrued when the police discovered a firearm on his person during a traffic stop.  In this Court, Appellant challenges the denial of his motion to suppress the seized firearm.  We affirm.

We glean the following from the record.  On August 13, 2021, at approximately 2:00 p.m., City of Philadelphia Police Officers Malik Liverpool and Anthony Ramuno stopped Appellant's vehicle because it did not have a visible license plate.  Once Appellant stopped the vehicle, Officer Liverpool approached him while Officer Ramuno approached the female front-seat passenger.

As Officer Liverpool explained to Appellant the reason for the stop, he noted that Appellant was stuttering, shaking, attempting to answer questions

posed to the passenger by Officer Ramuno, and, at one point, reaching beneath his seat. Appellant proffered that his behavior was due to a seizure he had suffered the night before. The passenger gave Officer Ramuno her information, including her permit for carrying a firearm. Consequently, she handed over her firearm, which she had stowed beneath her seat, to Officer Ramuno for the remainder of the stop. Officer Ramuno then left to check her information in their patrol vehicle.

When Officer Ramuno returned, Officer Liverpool asked Appellant to step out of the vehicle. Appellant indicated that he needed crutches and directed Officer Ramuno to retrieve his crutches from the trunk of the vehicle. As Appellant pivoted to exit the vehicle through the driver's side door, the passenger attempted to reach into the left pocket of Appellant's shorts. When confronted by Officer Liverpool, she pulled back and denied doing so. The officers then assisted Appellant with exiting the vehicle and standing on his crutches. Officer Liverpool immediately "frisked the outer pocket, and [he] felt that L-shaped object. [He] then reached into the pocket and recovered the firearm." N.T. Suppression, 3/4/22, at 14. The officer clarified that his hand was "[o]n top of the pocket" when he felt the L-shape which, based on his experience and training, he knew to be a firearm. *Id*. at 15. At that point, Officer Liverpool handcuffed Appellant and then secured the firearm. Ultimately, the Commonwealth charged Appellant with possession of firearm prohibited, firearms not to be carried without a license, and carrying firearms in public in Philadelphia.

Appellant filed a motion to suppress, summarily challenging the stop, search, and seizure of the firearm. The court held a suppression hearing, at which the Commonwealth presented testimony from Officer Liverpool and a video recording of the stop captured by Officer Ramuno's body camera. Appellant argued at the conclusion of the hearing that the video showed Officer Liverpool reaching into Appellant's pocket without first conducting a frisk. Upon consideration, the trial court rejected this interpretation of the video and instead credited the officer's testimony and denied the motion to suppress. Appellant immediately proceeded to a stipulated nonjury trial, at the conclusion of which he was found guilty of all charges.

On October 14, 2022, following preparation of a pre-sentence investigation report and mental health assessment, the trial court sentenced Appellant as indicated above. Appellant timely filed a post-sentence motion for reconsideration. Although the order does not appear in the record, the docket reflects that Appellant's motion was denied by operation of law on February 15, 2023. This timely appeal followed. Since the trial judge had since been commissioned as a federal district court judge, no Pa.R.A.P. 1925(b) statement was ordered nor Rule 1925(a) opinion authored.

Appellant presents a single issue for our consideration: "Did the trial court commit clear and manifest error in denying Appellant's motion to suppress physical evidence where the findings of fact are clearly contradicted by uncontroverted video evidence admitted in the hearing?" Appellant's brief at 1. We consider this claim mindful of the following principles:

> [O]ur review of the denial of suppression is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is *de novo*. Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted. Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial.

*Commonwealth v. McMahon*, 280 A.3d 1069, 1071 (Pa.Super. 2022) (cleaned up).

As a general rule, "for a search or seizure to be reasonable under the Fourth Amendment and Article I, [§] 8, police officers must obtain a warrant before conducting the search or seizure." *Int. of T.W.*, 261 A.3d 409, 416 (Pa. 2021). There are exceptions to this rule, including what is "commonly referred to as the *Terry*[1] stop and frisk[.]" *Id*.

As summarized by our High Court, an officer may conduct a *Terry* frisk during a lawful investigatory detention if he "reasonably suspect[s] that the person is armed and dangerous." *T.W.*, 261 A.3d at 417 (cleaned up). The frisk entitles "a police officer [to] conduct a limited search of an individual's outer clothing in an attempt to discover the presence of weapons which may be used to endanger the safety of police or others." *Commonwealth v. Guillespie*, 745 A.2d 654, 657 (Pa.Super. 2000) (cleaned up). If, during that frisk, the officer "detects an object within a suspect's clothing, assuming no

_____

[1] *Terry v. Ohio*, 392 U.S. 1 (1968).

- 4 -

other exception to the general warrant requirement applies, the officer may remove the object under one of two justifications." **T.W.**, 261 A.3d at 422. Namely, if the officer has "reasonable suspicion that the object is a weapon" or, pursuant to the plain feel doctrine, if it is determined during the frisk that the object is not a weapon but, "by touch, it is immediately apparent that the object is illegal contraband." **Id**.

Appellant's argument on appeal is limited in scope. He asserts that the trial court erred in denying his suppression motion because the video evidence established that the officer reached into his pocket without first conducting a **Terry** frisk.[2] Appellant concedes that the circumstances of the stop "would have justified a frisk under **Terry**, but not an immediate search of the pocket." Appellant's brief at 5. According to Appellant, the video evidence contradicts the court's finding that the officer did not go directly into the pocket. **Id**. In further support of his argument, he highlights Officer Liverpool's initial

_____

[2] We observe that Appellant did not challenge the propriety of the frisk prior to the suppression hearing. His motion included a boilerplate challenge to the stop, search, and seizure, as well as the warrantless search of the vehicle. **See** Motion to Suppress, 12/28/21, at ¶ 2 ("[Appellant] challenges the validity of the stop, search, and seizure of any evidence recovered in the above matter, and asserts the violation under" the Pennsylvania and United States constitutions.). At the outset of the suppression hearing, counsel refined the challenges thusly: (1) "[T]he reason for the traffic stop had concluded. Therefore, the police would have needed separate probable cause to continue to detain my client[;]" and (2) "[N]either furtive movements nor excessive nervousness provide a sufficient basis upon which to conduct an investigatory detention." N.T. Suppression, 3/4/22, at 6. Only during oral arguments at the conclusion of the hearing did Appellant first allege that the officer conducted an improper **Terry** frisk by purportedly proceeding directly to his pocket. **Id**. at 34.

testimony that he "immediately went for the pocket that she was reaching into and seen a firearm." N.T. Suppression, 3/4/22, at 14. Thus, Appellant maintains that the officer's actions exceeded the scope of a permissible *Terry* frisk and the trial court erred in denying his motion to suppress. *See* Appellant's brief at 5.

As noted, the court credited the testimony of Officer Liverpool and found that the video evidence was not inconsistent with the officer's accounting:

> It should also be noted that one of the things that is not apparent on this dry record but is apparent in the video is the type of clothing that [Appellant] is wearing. [He] is shirtless. I believe he's barefoot, if my recollection is correct. He is wearing what appears to be boxers and then very loose fitting basketball shorts, for lack of a better descriptive term, during which time the officer pulls him out. I do not believe that the officer went straight into the pocket. I do believe that based on that material and based on the officer's movement as he's getting out and adjusting the defendant, there was a -- he did feel a firearm. I did find the officer credible.

N.T. Suppression, 3/4/22, at 42.

Our review of the certified record confirms that the court's findings are amply supported by the evidence presented. It is clear from the entirety of Officer Liverpool's testimony that he was concerned about Appellant's left pocket and decided to begin the frisk in that area. Upon first feeling outside the pocket, he immediately recognized the item inside as a firearm, *i.e.*, he had a reasonable suspicion that the object inside the pocket was a firearm. Based thereon, he ceased frisking the remainder of Appellant's person and

reached inside the pocket to confirm the presence of a gun, which he subsequently secured after handcuffing Appellant.

Contrary to Appellant's assertion, the body camera video does not contradict Officer Liverpool's testimony. Upon review, the footage reveals that the frisk and removal of the firearm transpired within a matter of seconds. Notably, the footage during the relevant portion cuts off just below Appellant's waistband and around the top of his pocket. Thus, it does not capture what is happening around most of the area surrounding his pocket. Additionally, neither the camera nor the individuals involved are stationary, obfuscating our ability to view what transpired with Appellant's pocket.

From what we can discern, the video portrays Officer Liverpool's hand moving towards Appellant's pocket and touching the top of it once Appellant is outside the vehicle and beginning to move on his crutches. We determine this movement to be consistent with the officer's testimony that he first felt the outside of Appellant's pocket. Given Appellant's lightweight shorts and his movements as he exited the vehicle, it is entirely conceivable that the officer instantaneously formed a reasonable suspicion that the item he felt through the outside fabric of the pocket was a firearm. In the next second, the officer's hand reaches into Appellant's pocket and then leaves the frame. Officer Liverpool then handcuffs Appellant and thereafter retrieves the firearm from his pocket. Once again, this corroborates the officer's testimony that after he detected a firearm through the material of Appellant's shorts, he immediately

went into Appellant's pocket to confirm the presence of the weapon and to secure it.

Stated simply, the video evidence does not unequivocally show that Officer Liverpool lied on the stand or that he went into Appellant's pocket without first frisking the outside of it. Rather, the testimony and video evidence consistently establish that the frisk Officer Liverpool conducted complied with the dictates of **Terry**. Critically, there is no requirement that a frisk be conducted in a certain anatomical order or that it cover a suspect's entire person before an officer may secure a perceived firearm. Nor is there a temporal mandate for how long a frisk must last before an officer may form a reasonable suspicion that what he feels is a weapon.

Rather, "[s]ince the sole justification for a **Terry** search is the protection of the police and others nearby, such a protective search must be strictly limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby." **Guillespie**, 745 A.2d at 657 (cleaned up). Surely, Officer Liverpool's decision to first frisk the outside of the pocket where he suspected a firearm may be found was a permissibly limited search to dispel his safety concerns. Once he "reasonably suspected the object to be a weapon[,]" he was permitted "to conduct a search of the pocket." **T.W.**, 261 A.3d at 424. Given the circumstances present in this case, we conclude that Officer Liverpool was able to form that reasonable suspicion within a split second and therefore was permitted to reach into Appellant's pocket when he did.

Based upon the foregoing, we hold that the court's factual findings are supported by the record, and we observe no error in the court's conclusion that Officer Liverpool's actions comported with the requirements of **Terry**. **See T.W.**, 261 A.3d at 424 (holding that the officer "did not exceed the scope of a permissible **Terry** frisk by reaching into and removing a suspected weapon from [T.W.'s] left pants pocket during the frisk"). Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judge McLaughlin joins this Memorandum.

Judge Beck files a Dissenting Memorandum.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/16/2024