J-S31044-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WADI S. CLENTSCALE | : | |
| | : | |
| Appellant | : | No. 790 EDA 2023 |

Appeal from the Judgment of Sentence Entered October 14, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0007727-2021


BEFORE:  BOWES, J., McLAUGHLIN, J., and BECK, J.

DISSENTING MEMORANDUM BY BECK, J.:　　　**FILED DECEMBER 16, 2024**

I respectfully dissent.  In my view, the video evidence unequivocally shows Officer Malik Liverpool reaching directly into the pocket of Appellant, Wadi Clentscale, without first conducting a frisk of his outer clothing.  I would therefore conclude that the officer exceeded the scope of a permissible **Terry**[1] stop and frisk and the warrantless search of Appellant's person and seizure of the firearm during the investigative detention was illegal, warranting reversal of the order denying the suppression motion.

Appellant does not dispute that Officer Liverpool had reasonable suspicion to conduct a **Terry** stop and frisk.  **See** Appellant's Brief at 5.  Rather, as the Majority correctly observes, he challenges the trial court's

_____

[1] **Terry v. Ohio**, 392 U.S. 1 (1968).

findings that Officer Liverpool credibly testified that he "fe[lt] a firearm" and did not go "straight into the pocket" as unsupported by the record because these statements are contradicted by Officer Anthony Ramuno's body-worn camera footage. *Id.* (citing N.T., 3/4/2022, at 42).

Where a trial court bases its factual findings on its credibility determinations, video footage that is part of the certified record may constitute contradictory evidence sufficient for this Court to reject the finding(s) of fact. *See Commonwealth v. Griffin*, 116 A.3d 1139, 1143 (Pa. Super. 2015) (rejecting the trial court's credibility determination where the police officer's testimony at the suppression hearing was not consistent with what was depicted on video evidence).

As our Supreme Court explained, *Terry* held that "it is reasonable under the Fourth Amendment for police officers to briefly stop a suspect 'where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot'" and "for the brief stop to also include a frisk of the suspect's **outer clothing** where the police officer has reason to believe the suspect is 'armed and dangerous.'" *Interest of T.W.*, 261 A.3d 409, 416 (Pa. 2021) (quoting *Terry*, 392 U.S. at 30) (emphasis added); *see also* Maj. Op. at 4 ("The frisk entitles 'a police officer [to] conduct a limited search of an individual's **outer clothing** in an attempt to discover the presence of weapons which may be used to endanger

the safety of police or others.'") (quoting *Commonwealth v. Guillespie*, 745 A.2d 654, 657 (Pa. Super. 2000)) (emphasis added).

My review of Officer Ramuno's body-worn camera footage leads me to conclude that the trial court's finding that Officer Liverpool felt a firearm before removing it from Appellant's pocket is not supported by an objective viewing of that footage.[2] Instead, as Officer Liverpool initially testified, upon Appellant's exit from the car, he "immediately went for the pocket that [the passenger] was reaching into[.]" N.T., 3/4/2022, at 14. It was not until he was questioned further by the prosecutor, who asked the officer what he did when he "went for the pocket" that he responded, "I frisked the outer pocket, and I felt that L-shaped object. I then reached into the pocket and recovered the firearm." *Id.*

The body-worn camera footage shows both officers assisting Appellant with his crutches as he tries to stand up. *Id.*, Ex. C-5 at 9:13-10:11. Before Appellant stands, Officer Liverpool notices the passenger trying to reach into Appellant's pocket. *Id.*, Ex. C-5 at 9:46-9:53. As Appellant stands, Officer Liverpool's hands are on Appellant's right arm and the back of his waist, supporting Appellant as he regains his balance and gets the crutches underneath his arms. *Id.*, Ex. C-5 at 10:11-10:20. Officer Liverpool then

---

[2] There is no suggestion or indication that the video evidence was altered in any way, nor any contention that it does not accurately depict what actually happened.

uses both of his hands to pull the waistband of Appellant's shorts back and away from his body. *Id.*, Ex. C-5 at 10:20-10:21. With Officer Liverpool's left hand holding Appellant's shorts away from his body, the officer moves his right hand to the left pocket of Appellant's shorts and immediately pulls the pocket open to look inside and then places his hand inside the pocket. *Id.*, Ex. C-5 at 10:21-10:29. Officer Liverpool then handcuffs Appellant and the officer returns his left hand to the left pocket of Appellant's shorts and retrieves a firearm. *Id.*, Ex. C-5 at 10:29-10:44.

I cannot agree with the learned Majority that the video supports a finding that Officer Liverpool first felt the outside of Appellant's pocket before reaching inside the pocket to confirm the presence of a gun. *See* Maj. Op. at 6-7. At no point in the video does Officer Liverpool pat down Appellant's outer clothing. Although the Majority is correct that footage "cuts off just below Appellant's waistband and around the top of his pocket," it is not, as the Majority concludes, the "relevant portion" of the video. *See id.* at 7. To the contrary, the video evidence clearly shows Officer Liverpool's hands as Appellant exits the car, as the officer pulls Appellant's shorts away from his body, and as the officer pulls Appellant's left shorts pocket away and reaches into it. *Compare id. with* N.T., 3/4/2022, Ex. C-5 at 10:10-10:22.[3] It is not

_____

[3] For a very brief moment, before he pulls Appellant's shorts away from his body at the waistband or reaches into his pocket, Officer Liverpool's right hand exits the frame at the 10:12 mark of the video and returns to the frame
*(Footnote Continued Next Page)*

until **after** Officer Liverpool pulled Appellant's shorts away at the waistband, pulled the left shorts pocket away, and reached into Appellant's left pocket that Officer Liverpool's hands go out of view for approximately four seconds. **See id.**, Ex. C-5 at 10:24-10:28.

Because the video evidence clearly rebuts Officer Liverpool's testimony, we are not bound by the trial court's finding that Officer Liverpool frisked Appellant prior to seizing the firearm.[4] **See Griffin**, 116 A.3d at 1143. Although an officer's pat down of a suspect's outer clothing is permissible, the same cannot be said about police reaching into a person's pocket to search for contraband without first conducting a proper frisk. **See Terry**, 392 U.S. at 29-30. In fact, quite the opposite is true: as the **Terry** Court recognized, a frisk only "presents no serious problem" because the officer "did not place his hands in [the defendants'] pockets or under the outer surface of their garments until he had felt weapons." **Id.** Further, this Court has held that a police officer "far exceed[s]" the scope of a permissible **Terry** stop and frisk where the officer immediately reaches into the defendant's pockets without

_____

approximately two seconds later. **See id.**, Ex. C-5. During this brief time, the officer's right hand is next to the right side of Appellant's body, assisting him with his crutches, and is not anywhere near the left side of Appellant where the firearm was seized, making it impossible for that moment to have been the timing of the alleged frisk of the left side of Appellant's outer clothing.

[4] Officer Liverpool further testified that he "did not reach into the pocket until after [Appellant] was cuffed," which is clearly contradicted by the video evidence. **Compare** N.T., 3/4/2022, at 25 **with id.**, Ex. C-5 at 10:21-10:24.

first conducting a frisk. **See Commonwealth v. Cavalieri**, 485 A.2d 790, 794 (Pa. Super. 1984).

Accordingly, I would conclude that the trial court erred in denying Appellant's suppression motion because the video evidence clearly and unequivocally shows Officer Liverpool reaching directly into Appellant's pocket without first conducting a frisk of his outer clothing in violation of **Terry**.[5] As such, the Commonwealth should not have been permitted to use the seized firearm to secure Appellant's convictions and I respectfully dissent from the Majority's decision to affirm Appellant's judgment of sentence.

_____

[5] Officer Liverpool's use of both hands to pull the waistband of Appellant's shorts back and away from his body is also problematic as that act alone constitutes a search that is not permitted under the guise of **Terry**. **See Minnesota v. Dickerson**, 508 U.S. 366, 379 (1993) (recognizing that in the absence of reasonable suspicion developed during a proper **Terry** frisk that the suspect is in possession of a weapon, manipulation of a suspect's outer clothing is a search "not authorized by **Terry** or by any other exception to the warrant requirement"); **see also T.W.**, 261 A.3d at 420. Appellant, however, focuses his argument before this Court (as he did before the trial court) on the officer's failure to conduct a frisk prior to reaching into the left pocket of his shorts. As Appellant does not specifically address the officer's manipulation of his waistband to look for a weapon in his pocket, this would not be a basis for this Court to reverse the suppression decision. **See Steiner v. Markel**, 968 A.2d 1253, 1256 (Pa. 2009) ("[A]n appellate court cannot reverse a trial court judgment on a basis that was not properly raised and preserved by the parties.") (citations omitted).